GEORGE D. HULING, APPELLANT, vs. THE FLORIDA SAVINGS BANK AND REAL ESTATE EXCHANGE, APPELLEE.

1. The omission of the signature of plaintiff's attorney to an amended declaration, his name already being of record, and defendant having pleaded, is no ground for arresting or reversing the judgment.

2. After a full trial upon the merits and verdict upon the matters embraced in the declaration and pleas, the mere absence of a *similiter* to a plea or replication is not ground of arrest of judgment or reversal, the *similiter* not having been insisted on by the opposing party or required by the court.

3. When in assumpsit a defendant has pleaded the general issue, "did not promise as alleged," and a second plea that he did not contract as alleged, the latter is merely a repetition of the general issue.

4. When a plea is not responsive to the declaration or any part of it, it is frivolous and may be treated as a nullity, and without motion to strike out or demur the plaintiff is entitled to judgment.

5. A verdict should not be set aside as against the weight of evidence, unless the preponderance is such that it must have been produced by considerations other than a due respect to the evidence.

6. A verdict is not against evidence when there is legal evidence to support it, though there be conflicting testimony upon material points.

7. Both parties having proposed written instructions which were given by the court to the jury and no exception being taken, the acquiescence of parties is presumed, and alleged error in some portion of the charge cannot be insisted upon on appeal.

Appeal from the Circuit Court for Duval county.

The appellee, who was plaintiff in the court below, brought suit in assumpsit against George D. Huling, the appellant, and by its amended declaration (the original declaration having been demurred to and the demurrer admitted by the plaintiff) alleged that the defendant, Huling, appointed and constituted the plaintiff his agent for the sale of certain coupon certificates owned by the defendant, and that he authorized, empowered and employed to make sale of such certificates at any price over fifty-five per cent. of their face value, and that plaintiff was to be allowed all sums received by it over fifty-five per cent. of the face value of said certificates as compensation for making such sale; that the plaintiff sold and agreed to deliver to one Philip Walter the said certificates amounting to fifty-five hundred dollars, as expressed by their face value, at sixty-five per cent. of such face value; that defendant, although notified of such sale by the plaintiff and requested to carry out the contract with said Philip Walter, failed and refused to do so, and that the sale was not completed and no money was received by plaintiff, and that plaintiff is entitled to its commissions, and claims one thousand dollars damages.

To the said amended declaration the defendant, Huling, filed the following pleas:

1st. That he did not promise as alleged.

2d. That he did not authorize, empower and employ the plaintiff to enter into contracts with purchasers for the sale of said certificates.

3d. That he did not authorize the plaintiff to sell said certificates at any price over fifty per cent. of their face value as alleged.

The plaintiff did not reply to or take issue upon or make any other disposition of said pleas, but went to trial, each party introducing witnesses and other testimony.

After the charge of the court the jury retired and brought in a verdict for the plaintiff for five hundred and fifty dollars.

The defendant moved the court in arrest of judgment and for a new trial on the following grounds:

1st. Because no replication was filed to defendant's pleas.

2d. Because plaintiff went to trial without disposing of defendant's pleas.

The third ground was abandoned.

4th. Because the plaintiff's amended declaration is not signed.

5th. Because the verdict is contrary to the evidence.

6th. Because the verdict of the jury is contrary to the manifest weight of the evidence.

7th. Because the verdict is contrary to the charge of the court.

8th. Because the court erred in giving the third charge asked by plaintiff, the tendency of said charge being to confuse and mislead the jury, and being otherwise erroneous.

9th. Because the court erred in giving the fourth charge asked for by plaintiff.

10th. Because the charges given by the court in said cause were not sealed by the Judge.

The motion was denied in toto by the court, and the defendant excepted and appealed from the judgment, and assigned for error—

698 SUPREME COURT.

Huling v. The Florida Savings Bank, &c.—Argument of Counsel.

1st. That the court erred in refusing to grant the motion in arrest of judgment.

2d. That the court erred in refusing to grant the motion for a new trial.

3d. That the record shows that there was no joinder of issue to any of defendant's pleas, therefore it was error to enter up judgment for plaintiff.

*Fleming & Daniel* for Appellant.

We may consider together the first and third errors assigned, in which is involved the question as to whether or not it was necessary to join issue on defendant's pleas, which was raised in the lower court by the first and second grounds of the motion which was urged for arrest of judgment.

In the case of Miller & Croom vs. Hoc., 1 Fla., 189, it is decided that " upon a failure to rejoin to the replication to a plea of *non-damnificatus* there is no issue which can be submitted to a jury, and the defect is not cured by a verdict ;" and in Benbow vs. Marquis & Co., 17 Fla., 441, this court holds that " it is error to submit an issue upon one plea to the jury while other pleas remain undisposed of, when it appears that they were not abandoned." In which case, in the opinion delivered by Mr. Justice Westcott, the decision in McKinnon vs. McCollum, 6 Fla., 376, is cited and approved, which is to the same effect.

The pleas in the case at bar have no formal conclusion, nor is such conclusion necessary under our rules of pleading.

The first and second pleas being a traverse of allegations in the declaration would, under the general rules of pleading, conclude to the country.

Wherefore it is contended by the appellant that a joinder of issue is not necessary.

But Section 33 of the practice act, known as Blount's

Code, as we contend, requires a joinder of issue to all pleadings where issue is tendered.

· It provides that either party may plead in answer to the plea or subsequent pleading of his adversary that he joins issue thereon. And after giving the forms provides further " that in all cases where plaintiff's pleading is in denial of the pleading of the defendant, or some part of it, the plaintiff may add a joinder of issue for the defendant," thereby giving the plaintiff the right to add the joinder of issue, if the defendant fails to do so, and prevent the possibility of prejudice to his case. It then the joinder of issue is unnecessary to pleading which denies the antecedent pleading, why give the plaintiff the right to protect himself by filing the joinder of issue upon the failure of defendant? and why should the statute provide for the joinder of issue to a plea in denial?

Again, the said section provides that either party may plead in answer to plea, or subsequent pleading, that he joins issue thereon. We contend that the word *may* here used means the same as *shall*.

In Mitchell vs. Duncan, 7 Fla., 13, it is held that when the statute directs the doing of a thing for the sake of justice the word *may* means the same as *shall*. See also Supervisors vs. U. S., 4 Wallace, 435.

Section 33 of said practice act, providing for the " joinder of issue," follows in regular sequence the section of said act (Nos. 30, 31 and 32) which provides for pleas and subsequent pleadings by defendant and plaintiff respectively in denial of the preceding pleading.

The case of Benbow vs. Marquis & Co., above cited, was an action of replevin for logs. The pleas were—first, the general issue; second, denial of property in the plaintiff; and third, a denial of plaintiff's right of possession; the fourth plea alone sets up new matter; under the rules of .

pleading the second and third pleas, as well as the first, being in denial of allegations of the declaration, should conclude to the country, and not with a verification. 1 Chitty's Pleading, 16 Am. Ed., p. 583.

In delivering the opinion of the court the learned Judge makes no distinction as between the second and third pleas which are in denial, and the fourth which sets up new matter, and subjects them without discrimination to the rule laid down in McKinnon vs. McCollum, holding it error to submit said pleas to the jury without replication.

It is contended by counsel for the appellee that an allegation of the declaration denied by the plea presents an issue to the jury, and that no *joinder* is necessary.

We answer that a joinder is necessary to show that the plaintiff accepts the issue tendered, and consents to go to trial on such issue instead of demurring or replying specifically.

It is a rule of pleading, the propriety and wholesomeness of which has been tested by the experience of ages.

We would call the attention of the court to the case of Earle vs. Hall, 22 Pickering, 202, where it is held that a plea concluding to the contrary is not complete without a *similiter* and where the question is fully discussed.

In addition to the foregoing, we would respectfully submit to the court that the third plea, which is in the following words : Defendant says " that he did not authorize the plaintiff to sell said certificates at any price over fifty per cent. of their face value as alleged," although ending with the words " as alleged," is not as a fact in denial of any allegation of the declaration, which alleges that the defendant " authorized and empowered and employed plaintiff to enter into contracts with purchasers for the sale of said certificates at any price over fifty-five per cent. of their face value," the declaration alleging authority to sell at any price over *fifty-*

JANUARY TERM, 1883.　　701

Huling v. The Florida Savings Bank, &c.—Argument of Counsel.

*five* per cent., and the plea denying any authority to sell at any price over *fifty* per cent. This plea should have been disposed of ; if good, it should have been replied to ; if bad, demurred to. The failure to do either, and submitting the case to the jury with this plea undisposed of under the rules laid down by this court in the decisions above cited, was error.

It is contended by appellee that the failure to join issue is cured by verdict ; but that is contrary to the uniform decisions of this court from the time of its creation to the present, and we would again invoke the decision in Miller & Croom vs. Hoc, 1 Chitty's Pleading, 16 Am. Ed., 626.

We do not find that doctrine supported. There are cases where the court has permitted the record to be amended after verdict by adding the *similiter* where it had been omitted. But no such amendment has been made in this case, and if that were possible at the time when trial was had we submit that the record could not be so amended after the term.

We come now to consider the second error assigned ; that the court erred in refusing to grant the motion for a new trial. There are certain of the grounds for the motion for new trial which might with propriety be urged on the motion to the Circuit Court, but under the rulings of this court, as frequently expressed, would not be here considered. We will, therefore, confine ourselves to such grounds as we think this court will take into consideration ; the sixth ground is that the verdict of the jury is contrary to the manifest weight of the evidence.

It is held by this court in Wilson vs. Dibble, 14 Fla., 47, " that a new trial will not be granted as against the weight of evidence, unless the preponderance is such as to warrant the opinion that the verdict was produced by improper influences."

702          SUPREME COURT.

Huling v. The Florida Savings Bank, &c.—Argument of Counsel.

Is not the preponderance of testimony in favor of the defendant in this case sufficient to warrant such influence?

J. C. Greeley, the President of the plaintiff, testifies that Huling authorized him to sell the coupon certificates in question and account to him at 55 cents for his compensation; he claims all in excess over fifty-five per cent. of their face value.

The defendant, Huling, denies this, and says that he did not authorize Greeley to make sales, and made no such agreement as to commissions, but that he told Greeley that if he would send him a purchaser to whom he, Huling, should make a sale he would pay him a commission, which was to be five per cent.

Huling's testimony is corroborated in substance by Gordon E. Weld, a disinterested witness, in answer to fourth direct interrogatory. In addition thereto Huling testified that Greeley (who acted throughout as the President of the bank) telegraphed him tha the had sold the certificates at fifty-five cents. This was not denied by Greeley, and therefore must be taken as a fact admitted. And we submit that the plaintiff is estopped in a suit against Huling to show that it sold for a higher figure, and admitting, for the sake of the argument, the truth of Greeley's testimony as to his authority to sell, and his compensation being all in excess of fifty-five per cent., he is entitled to receive nothing, as he advised Huling that he had sold at that figure. And Huling had a right to assume that he was at liberty to sell to any other party without prejudice to the plaintiff.

After perusal of the brief of counsel of appellee we deem it proper to make the following reply to the authority by him. cited in support of the proposition that the omission to file *similiter* is not a fatal defect, to-wit: 8 Fla., 9. In this case the court, without elaborating on the point, de-

cides it in a few words on the act of 1828, as contained in Thompson's Digest, now found in McClellan's Digest, 453, Section 2, under the head of Criminal Proceedings. We submit to the court that the words " *misjoinder of issue* " refer to such a case as when there is a joinder of issue or attempted joinder of issue actually filed, but not a proper joinder of issue under the rules of pleading, and does not apply to a case, as this when no joinder of issue whatever was filed. This, too, would appear from the preceding words in the statute, " mispleading," " insufficient pleading," referring, as we claim, to pleas in, but not sufficient or proper, but not to an entire failure to plead. Again, we submit to the court that the act known as Blount's Code, providing specially for a joinder of issue, McClellan's Digest, 823, Sec. 48, and p. 825, Sec. 51, was passed long subsequent to the statute under which the case in 8 Fla. referred to was decided. If the said statute is applicable to and governs this case, would it not be equally applicable to, under its broad terms, the cases referred to by us in 1 Fla., 6 Fla. and 17 Fla., where judgments were reversed for failure of parties to file joinder of issue or other proper pleading.

*R. B. Archibald* for Appellee.

Mr. Justice Westcott delivered the opinion of the court:

The appellant says that judgment should have been arrested upon the ground that the amended declaration was not signed, and because the plaintiff failed to join issue upon the defendant's pleas.

The first plea was the general issue that defendant " did not promise as alleged." The second, that he did not contract with plaintiff as alleged. This is but a repetition of the first plea, a denial of the promise or contract. Webster

vs. Tiernan, 4 How., Miss., 355 ; Rule 74, Circuit Court Rules. The third plea is not responsive to any allegation in the declaration, and does not tender an issue.

As to the omission of the signature of plaintiff or attorney to the amended declaration we find that an attorney's name is signed to the præcipe and to the original declaration. After demurrer an amended declaration was filed giving the title of the cause, and in the introductory part the name of the plaintiff " by its attorney," but the name of the attorney is not signed at the foot. Without calling attention to this omission the defendant pleaded generally. The name of the plaintiff's attorney appearing of record and signed to the original declaration, the words " by its attorney " may be taken as referring to the attorney of record. The defendant having pleaded must be held to have waived irregularities of this character.

Was it necessary for the plaintiff to join issue by adding a *similiter* upon the pleas denying generally the contract or promise declared on ; and the parties having gone to trial without the *similiter*, and tried the cause upon its merits as though it was fully at issue, was it error to refuse a motion in arrest of judgment or to refuse a new trial ?

" It was once held that the want of a *similiter* was not aided by or amendable after verdict, but in a subsequent case, where a similar mistake was made, the court, after trial of the issue, refused to arrest the judgment, and the *similiter* was allowed to be inserted after verdict upon three grounds—first, it was an omission of the clerk ; secondly, it was implied in the ' &c.' added to the last pleading ; and thirdly, that by amending, the court only made that certain which the defendant understood to be so by his going down to trial." 1 Chitty on Pl., 16 Am. Ed., 626. In Wright vs. Horton, 1 Starkie, 400, the K. B. held that the court would after verdict direct a *similiter* to be entered,

although the objection founded upon the want of it was taken at the trial. See also Reeder vs. Bloom, 2 Bing., 384; Stockdale vs. Chapman, 2 Ad. & E., 419.

On writ of error in Siboni vs. Kirkman, 3 Mees. & Welsby, 46, the omission of a *similiter* was held to be amendable under the statute of amendments, even after final judgment, and after a writ of error had been brought and such omission assigned for error. The *similiter* is in strictness no part of the pleadings, since it neither affirms nor denies any fact in maintenance of the action or the defence, and merely expresses the acceptance of the issue tendered in referring the trial to the jury. Gould's Pleading, 291.

The Supreme Court of Pennsylvania in Shaw vs. Redmond, 11 S. & Rawle, 27, 33, says that where the defendant has had the full benefit of his own pleas on the trial the want of a traverse is cured by the verdict; and cites a note by Sergeant Williams to Bennet vs. Holbeck, 2 Saund., 317, showing the progress of the courts in granting such amendments or overlooking such defects after verdict. The court refers to Cooper vs. Spencer, 1 Stra., 641, where it was decided that a verdict did *not* cure the want of a *similiter ;* but in Sayer vs. Pocock, Cowp., 407, the want of it was aided after verdict. And Lord Mansfield said, "one is ashamed and grieved that such objections remain; they have nothing to do with the justice of the case, but only serve to entangle without being of the least aid in preventing irregularity."

The same ruling was made in Whiting vs. Cochran, 9 Mass., 533, and endorsed in McLellan vs. Crofton, 6 Greenleaf, Me., 307, 327; Brazzel *et al.* vs. Usher Breese, Ill., 35 ; Laber vs. Cooper, 7 Wallace, 565 ; Coan vs. Whitmore, 12 Johns., 353.

In Iowa, Couch vs. Barton, Morris' R., 354, the court holds that after verdict it is too late to raise an objection

that pleas remain unreplied to, unless the defendant shows that he endeavored to obtain replications prior to the trial.

This court in Burk vs. Clark, 8 Fla., 9, 13, refused to reverse a judgment for want of a *similiter* to a plea of not guilty in trover.

On the other hand, counsel for appellant refer to Miller & Croom vs. Hoc, 1 Fla., 189, where the court finds by the record that there was no rejoinder to a replication to a plea of *non-damnificatus*, (the suit was on an attachment bond) that there was a demurrer to another plea not disposed of, and no joinder; and a verdict for a gross amount covering two causes of action in two several actions submitted by agreement at the same time when there should have been two verdicts. For these errors the judgment was reversed. The court holds that there was no issue properly made up for submission to the jury, indeed that there was no issue either of fact or of law. The court does not cite authorities or present argument upon the precise question we are now considering. There was a replication to the plea of *non-dam.*, but whether it was general or special the report does not show.

The court in McKinnon vs. McCollum, 6 Fla., 376, held that it was error to submit an issue upon one plea to the jury while other pleas remain undisposed of, *when it appears that they were not abandoned.* The action was trover, and defendant pleaded the general issue and two special pleas concluding with a verification, neither of which two were replied to. The court says: "The first plea (the general issue) concluded to the country and might, with propriety, have been submittted to the jury had the other two pleas been disposed of, but thus to submit it while these other pleas remained undisposed of was an error for which the cause should be sent back, as it clearly appears that they were not abandoned."

The case of Benbow vs. Marquis, 17 Fla., 441, it is strenuously insisted, establishes the doctrine that the want of a *similiter* in this case is fatal to this judgment. We do not so understand it. That case was trover for logs. The pleas were, the general issue not guilty ; 2, denial of property in plaintiffs ; 3, denial of plaintiff's right of possession ; 4, that the logs were the property of the State, and that defendant was a timber agent and seized the logs as the property of the State. The second, third and fourth pleas concluded with a verification, and there was no replication. It was evident that these pleas were not abandoned. It was held that there being no issue joined upon the second, third and fourth pleas, the judgment in favor of plaintiffs must be reversed, the testimony showing that the defendant was entitled to the benefit of these pleas. The case was treated as *at issue* upon the plea of not guilty without a *similiter*, as was that of McKinnon vs. McCollum, *supra*, which is quoted in the opinion. No case decided in this State can be found in which a judgment has been reversed because of the mere omission of a *similiter* to a plea or replication, except, perhaps, the case of Miller vs. Hoc, above referred to.

The case of Earle vs. Hall, 22 Pick., 102, is cited as containing a full discussion of this question and as establishing the rule that a judgment must be reversed if the plea of the general issue is not followed by a joinder by the plaintiff. We do not so understand that case. The court say the law does not appear to be fully settled in England. But, they say, " whether such an omission may be amended or not, is immaterial in this case. It is clear that no issue was joined by the plaintiff on the several pleas, and his counsel refused to join them." The court below had by rule *required* the plaintiff to join issue upon the pleas, which he *refused* to do. Upon this the court say the conduct of

the plaintiff's counsel in refusing to take issue when required to do so by the court, authorized the court to enter a non-suit or discontinuance of the cause. No such case is presented here.

In the light of all the authorities we have been able to examine, our conclusion is that a *similiter* is not a substantive pleading but is a mere expression of the acceptance of the issue tendered in referring the cause to a jury, and that after final judgment, the *similiter* not having been insisted upon by defendant, the omission is amendable even after error brought and cannot be well assigned for error, the cause having been fully tried upon its merits. Shaw vs. Redmond, 11 S. & R., 33 ; Couch vs. Barton, Morris, Iowa, 354 ; Libona vs. Kirkman, 3 M. & W., 46 ; Whiting vs. Cochran, 9 Mass., 532, and other cases cited *supra.*

The third plea is not responsive to any fact alleged in the declaration, is immaterial and frivolous. Whether true or false, it does not affect the rights of either party. When a plea of this character presents no point, either in bar or abatement of the suit, the plaintiff may treat it as a nullity and sign judgment as for want of a plea. State vs. Williams, 3 Stewart, 454 ; Stanley vs. Hill, 9 Porter, 368 ; Thigpen vs. Miss. C. R. R. Co., 32 Miss., (3 George,) 347. In the latter case the plea was not demurred to nor in any wise disposed of by the court. Had the jury found a verdict ascertaining every fact to be true, the plaintiff should have had his judgment as by confession *non-obstante veredicto*, in so far as the rights of the parties depended on this plea. Steph. on Pl., 97, 129, and authorities cited ; Hyer vs. Vaughn, 18 Fla., 647, 654.

The motion in arrest of judgment was properly refused.

The motion for a new trial was upon the grounds that the verdict is contrary to the evidence ; contrary to the manifest weight of the evidence ; contrary to the charge of the court ; erroneous charges by the court to the jury.

We have carefully read and considered the testimony. That on the part of the plaintiff proves its case, while that of the defendants contradicts it in respect to the contract.

Mr. Greeley, President of the defendant corporation, testifies that Huling on or about April 16, 1881, came to his bank claiming to own about $5,500 of coupons for which he was entitled to scrip certificates, being one-half the amount of his coupons in the hands of the master, the certificates being convertible into lands, and Huling asked, " what can you do with Vose scrip ?" I said I could peddle it out at sixty-five cents, but could not get so much to sell it in large quantities. He then asked me what I could sell and account to him for. I said fifty-five cents. He said all right. We then talked about having the certificates issued. They were drawing eight per cent. interest until issued, and for that reason he did not want them issued sooner than necessary. He said he would instruct Judge Doggett to issue them as I wanted them ; that I might go ahead and sell and account to him for fifty-five cents. I was authorized to sell to the amount of fifty-five hundred dollars. I did not see or hear from Huling after that. I succeeded in effecting a sale on May 16, 1881, to Philip Walter of about $5,500 worth of the scrip at sixty-five cents on the dollar, and Walter paid me for it. I wrote Huling notifying him of the sale on the same day. Doggett did not issue the scrip as he said he had no order to do so. I then sent a telegram to Mr. Huling. Huling here produced the dispatch as follows: " May 16, 1881. To Geo. Huling—Wire Doggett to deliver certificates me ; whole amount; then will you take fifty per cent. for balance ; have written J. C. Greeley." On the same day he wrote a letter to Huling enclosing a blank receipt to be signed for Judge Doggett and containing suggestions as to sale of balance of Huling's scrip in Doggett's hands. No answer was received for four

or five days, when Huling telegraphed that he had sold the certificates.

On cross-examination Mr. Greeley says he only had one conversation with Huling other than the one referred to that he remembered. At the time when he authorized me to sell the certificates there was no one present but Mr. Warriner, the cashier. I am certain this was in April. It was about a month before I made the sale.

T. H. Livingston testified in behalf of plaintiff that he had been authorized by Mr. Huling to superintend the delivery of the certificates. Produces telegrams from Huling, one dated Kansas City, May 21, to Livingston: "Sell Driggs coupons convertible into certificates at sixty cents and collect amount." Also one dated May 27: " Telegraph Driggs I would like fifty-five for coupons not convertible into certificates. Sell Driggs others at sixty. G. D. Huling." Witness says the certificates were sold at sixty cents. Mr. Huling told me that Mr. Greeley was not authorized to sell the certificates, that he had no agent. The sale to Driggs was completed with him.

Huling testifies: I called at Mr. Greeley's office on a matter foreign to the coupons. I asked him if he was handling coupons, and what they were worth. He said he did not know. I asked him if he would give fifty-five cents for them. He said no, nor fifty cents. I then told him if any one came in inquiring about coupons if he would send him to me and I made a sale I would pay him a commission. I.asked him what his commission would be, and he said five per cent. This was in the evening, the latter part of February, 1881, in the presence of Mr. Weld and General Tillson. I did not authorize Mr. Greeley to sell the coupons. I had another interview with Mr. Greeley, and asked him if any one had inquired about such instruments. He said no. I never authorized Mr. Greeley at

any time, or at any price, to sell any property of mine. Mr. Greeley telegraphed me that he had sold my certificates at fifty-five cents. This telegram had been mislaid; was a day message on the 16th of May. I have made diligent search for this telegram, and inquired at the office here, and telegraphed to the office at Kansas City to get a copy of this dispatch, but was unable to get a copy. This telegram to me was: "Have sold your certificates at fifty-five cents." That was all I knew of. The telegram which has been put in evidence as coming from Mr. Greeley to me was a night dispatch following the day message. Mr. Weld went North about the first of March. I sold my certificates to Driggs; received a telegram from him the same day, the 16th of May, that Mr. Greeley telegraphed me inquiring about coupons. I did not answer Mr. Greeley because I thought he did not desire an answer, as he was not authorized to sell. I left here May 3, 1881. *Cross-Ex.—* The second interview with Mr. Greeley took place about 26th or 27th March. I had no interview with him in April, except that it might have been about the first or second. We were alone. I asked him if there had been any inquiry for such coupons. I think I telegraphed Driggs about the 17th or 18th of May. I sold at sixty cents. I did not answer Greeley's telegram till I had telegraphed Driggs that he could have the certificates at sixty cents on the dollar.

Gordon E. Weld, in behalf of defendant, testified that he was present at an interview at Jacksonville at plaintiff's place of business between defendant and Mr. Greeley, at which mention was made of certain coupons, but I cannot say what coupons. Mr. Huling asked Mr. Greeley if he would buy some coupons at a certain price, and Mr. Greeley said he would not, and then Mr. Huling said to Greeley that he was in the banking business and might

hear of some one who wanted them, and if he would send them to him to buy them he would pay " them a commission." I do not remember what the commission was. Was present at no other interview when such certificates were discussed. This was the last of February, 1881. Was introduced to Mr. Greeley and General Tillson at the time of the conversation mentioned.

Some other witnesses testified as to matters referring to coupons and certificates and the sale to Walter, which may or may not have a bearing upon the case, but the importance of the testimony is not very apparent. The Judge charged the jury, giving written instructions presented by counsel of both parties, and no exception was taken on either part. The jury returned a verdict for plaintiff upon which, after motion in arrest and for a new trial was denied, judgment was entered.

The verdict was not contrary to the evidence because the plaintiff's evidence was sufficient to support it.

Was it contrary to the weight of the evidence ? The jury thought not. They had the witnesses before them and understood the bearing of the testimony better than it is possible for us to understand it.

Mr. Greeley's testimony is direct and positive, and his acts subsequent to the alleged sale accord with his understanding of the agreement he testifies to. He acted as though such a contract existed, and he was endeavoring to carry it out. He made a sale, received money upon it, and gave a receipt for the money paid on account of it, and forthwith telegraphed and wrote to Huling as though the agreement with Huling existed, requesting Huling to make delivery. He says the agreement was made with Huling in April.

On the other hand Huling as positively denies the agreement, says the conversation was in February, and states

what the conversation was, and that no such conversation occurred at any other time, though he says he had other conversations with him at subsequent times, asking him whether any inquiry had been made for such certificates, &c.

Mr. Weld corroborates Huling as to so much of the conversation as he heard or remembers that occurred in February. He does not state that he heard or remembers all that was said between them.

Mr. Greeley states nothing as to seeing Mr. Weld, but says that when Mr. Huling authorized him to sell the certificates no one was present except Mr. Warriner, the cashier, and is positive it was in April. Mr. Huling shows that he left Jacksonville early in May. He received the dispatch from Greeley informing him that Greeley had sold the certificates on the 16th of May, and did not at once answer the dispatch, but telegraphed Livingston on the 21st to sell to Driggs at sixty cents. The jury had all the facts from the mouths of the witnesses. There is no actual conflict, except as between the testimony of Mr. Greeley and Mr. Huling.

We do not discover that the verdict was against a strong preponderance of evidence " leading to the conclusion that it was the result of prejudice or excitement, or other improper influence." 14 Fla., 49. Whether we should have found the same verdict if we were jurors is not the question, but whether it is apparent that the jury were guided by some influence other than a proper consideration of the testimony. Upon questions of veracity and conflicting testimony they are peculiarly the proper tribunal to decide them, and it should be a strong case of wrong done by them to warrant our interference. 14 Fla., 73.

It is alleged further that the verdict was contrary to the charge of the court; that is, that the evidence was not sufficient under the charge of the court to sustain the verdict.

The court charged at the request of defendant's counsel, that "if plaintiff recovers at all it must be upon the case set up in his declaration, and unless the jury find the facts sustain the case as set up in the declaration plaintiff cannot recover. In all civil cases the jury should be governed by the weight of testimony." This was the spirit and essence of the whole charge. We fail to discover that the verdict is contrary to the charge or to the law of the case. They have found that the contract was made and broken as alleged in the declaration. Counsel make no argument upon this point, except upon the character and weight of the evidence, which we have already considered.

Of the alleged errors in giving the third and fourth paragraphs of the instructions asked for by plaintiff, it must be remarked that defendant's counsel did not discover any error of law or any impropriety in the charge, and took no exception to it at the time. Having thus assented to it there is no ground for alleging error. The instructions given are signed and sealed by the Judge.

The judgment is affirmed.