C. B. McClenny, Appellant, vs. S. B. Hubbard, Appellee.

Where there is a conflict of testimony given on a trial before a referee, and his finding is in favor of a party upon the facts, this court will give the same effect to the finding as to the verdict of a jury, especially where such finding is supported by a preponderating number of witnesses who are not impeached.

Appeal from the Circuit Court for Duval county.

Trial before Mr. Wm. B. Young as Referee.

Hubbard sued McClenny in assumpsit for merchandise sold to him in May and June, 1881. Defendant denies the indebtedness. The cause was by consent referred to Wm. B. Young, as referee, who found in favor of plaintiff for the amount claimed, and a motion for a new trial hav-

ing been overruled, judgment was entered and defendant appealed.

Plaintiff proved the shipment of the articles charged in the account to the defendant from time to time at the dates charged, and their value as charged. They were shipped by rail to defendant's address, at Maxville, Fla., where he was building a mill. The goods were ordered by W. G. Merrill on account of defendant, and a bill of each shipment was mailed to defendant at Maxville immediately on shipment.

W. G. Merrill, for plaintiff, testified that he agreed with McClenny to build a mill at Maxville for a certain price, but very soon this contract was abandoned and settled and his father J. G. Merrill went on with the work by an arrangement with defendant. Witness says when McClenny and himself were talking about some belting McClenny told him to go to a certain store and get what he wanted for his mill there. Witness told him they were cheaper at Hubbard's. He said he was not on good terms with Hubbard, and he did not want to go to Hubbard's, but he finally said "you get them anywhere in Jacksonville you can get them cheapest, and if you can get them cheapest at Hubbard's you can get them there and tell him to send the bill with the things and I will send the money." Witness ordered most of the articles in the bill for defendent, and he authorized witness to order them. Witness was at Maxville when McClenny received bills for the goods made out against him and he made no objection to the bills being so made out. The goods were used in the construction of the mill. Nearly, if not quite all the goods, were ordered after I had given up the contract. Very little had been done before that time, which was the first of May.

J. G. Merrill, for plaintiff, testified that McClenny became dissatisfied with W. G. Merrill, and told witness he

would not have any more to do with him.   Witness proposed to quit, and McClenny said no, go on and complete the mill and he would pay for the material that had been used and furnish all additional material required.   McClenny told witness that he had authorized W. G. Merrill to buy belting and some other material at Hubbard & Co's.   He said he didn't care to deal with Hubbard because there was some unpleasant feeling between them, but that if my son could buy cheaper at Hubbard's he could do so, and he, McClenny, would furnish the money to pay the bills. After witness went to work for McClenny he was told by him to get some things where he could get them cheapest, and got some from Hubbard for Mr. McClenny ; they were used in constructing the mill; I directed that they be charged to McClenny.   This was from late in April to June.

S. B. Hubbard testified that the goods were shipped from time to time marked to McClenny, and bills made out against McClenny and sent by mail with each shipment. Never had any notice that McClenny was not properly charged with them till the goods were all sent and the mill completed.

W. H. Parker, for plaintiff, testified he was in the employ of Hubbard in the hardware business.   About the middle of May, 1881, on Bay street, in Jacksonville, met McClenny with W. G. Merrill, and McClenny asked me when that belting would be here.   I replied, in a week, as we had the invoice.   This was belting ordered by Merrill for McClenny.   He then said to Merrill, why did you not get the belting from Benedict & McConihe.   He replied that ours was a better article.   The belting arrived and was shipped May 29 to McClenny.

On the part of the defendant, McClenny was sworn, and testified that he made a contract with W. G. Merrill to

·build a mill for defendant at Maxville. The contract was in writing in a book which is lost. Witness was to pay him $1,300, Merrill to furnish everything except the machinery then on hand. This contract was never rescinded. Never authorized Merrill to buy articles on my account. Told him if you buy anything of Hubbard make your own arrangements with him, I won't have my name on his books. One bill of Hubbard's was handed me by my brother, and I told him to take it to Merrill, and say to him I have nothing to do with Hubbard's bill. No recollection of seeing any other until after the work was done, and Merrill was settled with and gone. Then all the bills were sent me and I directed my brother to send them back to Hubbard. Merrill applied for money to pay Hubbard's account. Never asked Merrill if the belting ordered by Hubbard for me had come. Was led by Merrill to believe he ordered the belting from Savannah in his own name. Never told J. G. Merrill I had authorized W. G., his son, to buy at Hubbard's, but told him the other way. My instructions to W. G. were, if he bought from B. & McConihe to have the bills sent to me, if he bought from Hubbard to make his own arrangements. Never authorized J. G. or W. G. Merrill to buy anything from Hubbard for my account. My first knowledge that Hubbard had charged these articles to me was after Merrill had been paid and gone away when the bunch of bills came from Hubbard's. Understood the materials were being furnished on account of Merrill, he was to furnish everything except the machinery on the ground. *Cross-examination.* I visited the mill during its construction about three times a week. Merrill purchased things of B. & McConihe and had them charged to me, and I paid them. Don't recollect whether the Hubbard bill handed me by my brother was made out against me. I received it very soon after Merrill commenced work

on the mill. About 60 days after the mill was completed and Merrill paid and left, he asked me for half the money to pay Hubbard's bill. I refused, because under the contract I was under no obligation, and he had been overpaid.

John D. McClenny, for defendant, testified. I was agent of C. B. McClenny, superintending his business at the mill. Defendant handed me back a bill of Hubbard & Co., and I gave it to Merrill. I said to Merrill that C. B. McClenny will be angry, as he does not deal with Hubbard. He replied, he told me not to get them there, but I bought where I could get them cheapest. Except one bill of Hubbard's, all the rest came in a bunch some 30 days after the completion of the mill. The one bill came by mail, and was made out against "C. B. McClenny, purchased by Merrill," as I recollect.

The foregoing are the salient portions of the testimony upon which the referee found in favor of plaintiff.

*John Earl Hartridge* for Appellant.

*Fleming & Daniel* for Appellee.

THE CHIEF-JUSTICE delivered the opinion of the court.

The only question in this case is as to the sufficiency of the testimony to charge defendant with the goods ordered by the Merrills. The Merrills, father and son, testify that defendant said he did not want to have dealings with Hubbard, but told them to get things where they could be got the cheapest and he would pay the bill. McClenny denies the testimony of both on this subject, and says he told them he would pay no bill at Hubbard's, but that he would pay for materials for building his mill which they should purchase at another store. The goods, except about $10 worth, delivered to the Merrills in person were shipped by Hubbard to McClenny's

35

address, by rail at the place where the Merrills were at work building the mill, and where McClenny had a brother superintending his business. The goods so addressed were put into the mill in its construction, as were the articles delivered at the store to the Merrills. Bills were mailed to McClenny's address at the times of shipment, ·made out against McClenny "by Merrill." One of these bills was received by defendant, as he himself testifies, "very soon after Merrill commenced operations on the mill." Yet with this notice that Hubbard was sending goods addressed to him for his mill, ordered by Merrill, the account being charged against McClenny, he merely sends the bill to Merrill and gave Hubbard no notice that Merrill was not authorized to order the goods. Defendant was at the mill two or three times a week, at least, while the work was going on, and his brother, his agent, was there all the time, receiving the goods addressed to defendant, not to Merrill, and they were used in the construction of defendant's mill. These circumstances strengthen the testimony of the Merrills that defendant was to pay for goods ordered by them for the mill. Though it may be true that by the contract with W. G. Merrill the latter was to furnish the articles, yet the defendant says he authorized the purchase from another party, by Merrill, on his account and paid the bills. Having notice that Merrill was purchasing in his name from Hubbard also, it was his own fault if he overpaid Merrill. But both the Merrills testify that defendant authorized them to buy where they could get goods cheapest and he would pay the bills. They also both testify that the original contract for building the mill was abandoned by both W. G. Merrill and defendant at the instance of defendant.

Taking the testimony altogether we think a jury would not hesitate to hold the defendant liable unless there was

something in the manner of the witnesses for plaintiff in the giving of their testimony to discredit them. Nothing of the kind appears in this record. The referee having the witnesses before him was well qualified to judge of their credibility, and the same weight should be given to his finding of facts as would be accorded to the judgment of a jury. Vansteenburg vs. Hoffman, 15 Barb., 28 : Wooden vs. Foster, 16 Barb., 146 ; Sinclair vs. Tallmadge, 35 Barb., 602.

Again, if defendant did not expect to pay the bills contracted with Hubbard, but Merrill was to pay them, we can conceive no good reason why defendant should concern himself with or object to Merrill buying of Hubbard, or otherwise interfere, if the goods were suitable and could be bought " cheaper " than elsewhere.

We find no error in the finding of the referee, and the judgment is affirmed.