M. L. BROWARD, APPELLANT, VS. JOHN B. ROCHE, AP-
PELLEE:

1. A verdict of a jury or finding of a referee is not against the evidence when there is sufficient legal evidence to support it, although there be conflicting testimony on material points.

2. A verdict of a jury or finding of a referee will not be set aside as against the weight of evidence unless its preponderance is such that the verdict or finding must have been produced by considerations other than a due respect to the evidence.

3. The declaration contained a special count to recover the amount paid by the plaintiff as surety on a note of the defendant, and a count on an acceptance of the defendant, and common counts for goods bargained and sold, sold and delivered, money paid, and an account stated. A copy of the note and of the acceptance, and an open account, were filed with the declaration. In the open account are charged the amount of the note, and that of the acceptance; and various items of provisions, and other goods and of cash, none of which are covered by the note or acceptance. The record shows that after testifying to several items in the open account: "The plaintiff here abandoned the store account, and offered in evidence the two notes due and mentioned in the special counts in the declaration:" Held, 1st. This was not an abandonment of his action as to either the note transaction or the acceptance. 2d. The abandonment of the store account as a cause of action did not preclude the plaintiff from showing that it, excluding the note and acceptance amounts, had been paid prior to the institution of the action.

4. An error in assessing costs is not a ground for a new trial.

5. Where the record does not show that costs as assessed include any item not properly chargeable to appellant, the assessment will not be disturbed on appeal.

30

Appeal from the Circuit Court for Duval county.

The case was tried before Joseph B. Christie, Esq., as referee.

This is an action of trespass on promises.

The first count is a draft drawn by one Clarke, in favor of Roche, on Broward for $204.41, dated May 24, 1881, accepted by Broward.

The second count states that on the 5th of March, 1880, Broward and plaintiff made their promissory note to Barnett for $130.00, payable sixty days, plaintiff adding his name as surety, and Broward drawing and using the money obtained thereon. Plaintiff was obliged to pay the note at maturity, by means whereof Broward became liable to pay, &c., Roche the amount thereof, &c.

The third count is for $322.75 for " goods, chattels and effects," sold and delivered to defendant, and bargained and sold, and for money found due on account stated.

The fourth count is *indebitatus* for $700 for money lent by plaintiff to defendant, and like sum expended by plaintiff for the use of defendant, and like sum received by defendant for use of plaintiff, and like sum for interest on divers sums of money foreborne by plaintiff to defendant at his request for divers spaces of time.

The defendant pleaded payment and issue was joined thereon. Afterwards defendant filed another plea to the common counts, stating that he "never was indebted as alleged in the common counts of plaintiff's declaration."

The cause, at this stage, was referred to Mr. Joseph B. Christie, as referee, for trial.

The testimony is as follows :

Roche says the note was made at its date, and given for the purpose of raising money by Broward, who received

the money and he signed it with Broward, and paid it at maturity, and Broward has paid him only $11.66 on it, which was paid April 15th, 1881.   Broward says he came up to see Roche a few days before the note became due, and told him his raft would not be in in time to meet the note, and requested Roche to pay the note, which he says R. agreed to do, and that he, Broward, would pay him in a few days from the raft which he agreed to turn over to R., to pay the note out of; that he, B., turned over the raft May 13th, 1880, it " amounting to $329.35, and gave him specific instructions to apply enough " of the proceeds to pay the note.   Conversation with R. as to meeting the note was " about his store.   B. does not recollect that any one was present.   Had been in habit of turning over rafts or surveys of rafts to R.   B. never inquired of R. as to the note, as he had entered it on B's. pass book; received no notification that it had been paid.   B. had a running account with R., at this time; he arrived at the date of the raft of $329, by the fact of having a memorandum of it, and R. credited on his pass book as of that date."

Roche says he did not receive instructions from Broward to apply any portion of the raft to the payment of the note. Had no conversation with Clarke as to payment for a mule by B., out of any raft.   The reason he did not apply the proceeds of the first raft to the note "was because B. was owing me a store account, and I thought that the proper place to apply it."   B. had testified as to such a conversation.

As to the draft or acceptance, Roche testifies as follows: Says he received it May 24, 1881.   Clarke was owing him this amount, and gave him the draft on Broward, which B. accepted; he receipted C.'s account "by Broward's acceptance;" the acceptance has never been paid; B. has never paid any money "on the note and acceptance except the

$11.66," which credit he says he has allowed; cannot tell anything about the time at which he gave C. this credit without referring to his books ; his recollection is that C. gave him a draft on B., who, when he came in, accepted it, and he, R., charged the amount up to B., and receipted C.'s account; that he released C. from further liability on account of the acceptance.

Broward testifies as to the acceptance : that he requested R. that the draft be got on him, B., for his, B's., protection ; he had already paid R. on August 13th, 1880, $197.-97, the amount R. claimed that C. owed him ; that he and C. had not had a settlement, and he wanted an order from him, so as to protect him, B., in the amount already paid by him for Clarke. R. claimed, several months afterwards, that C. owed him $6.44 more than $197.97, and he asked R. to get the draft from C. for the full amount of $204.41 for his protection ; that of this $204 he had paid $197.97 to R., August 13th, 1880, and the balance since ; paid the former since " out of a raft of timber." R. got the survey bill of the raft and sold to Hunter, and the $197.98 was to be paid out of it; he gave R. specific instructions to so pay, and this settled in full all the indebtedness owed him at that time, "including the joint note, the acceptance sued on and all store accounts ;" that at the conversation, as to the $6.44 balance, R. said he, B., had paid him the $197.-97, and he wanted the balance, and he told R. to get the order for the full amount. B. thinks that it was on 13th August, 1880, at R.'s store, the conversation as to assuming the Clarke indebtedness took place, Clarke being present ; they were talking about the proceeds of the raft turned over to R. on August 13, 1880. Clarke had an interest in the raft, and requested me to pay his store account out of the raft, the amount being $197.97 ; and then they asked R. for a balance that was due on the raft after accounts

were settled; R. said Hunter had not yet paid him for it, therefore he could not let them have the balance that was due; they did not have a settlement that day, but that R. acknowledged owing him a balance. "Have taken up notes heretofore paid by me which R. held; sometimes I took them up and sometimes I did not, one I never got"; that he has never had a final settlement with R.; it has been running until before suit was brought; thinks the balance due him by R., August 13, 1880, was about $200.

Mr. Clarke testifies as follows: That he recollects the raft sold to Wallace and Cashen, but does not know what it "surveyed" or "brought." He talked to R. about it; they got to talking about his store account; he told R. his account was to come out of the next raft; thinks he, R., had the raft and survey bill in possession at the time—*i. e.* "the raft sold to Hunter—the last raft;" that R. told him that he, R., had not given him, C., any credit out of the first raft, and that R. said that Broward had told him that he, B., owned his, C.'s, interest in the raft. R. told C. that the latter's interest in the first raft was to go to pay for the mule and to let his account run on the next raft. R. never presented his account to C., but ran over his books one day and said the latter was owing him $197 and some cents, may have been 97; this about the time R. was selling the second raft. They were all there in R.'s store, and B. was to pay R. the amount out of the raft he sold Hunter; that R. asked witness if he was willing for it to go that way, and witness said certainly, that he wanted him paid. Awhile after this witness was in R.'s store, and R. told him he had just run over his books, though he had not posted them up, and had found he owed him $204 instead of $197, and asked if witness would not give him an order on B. for the whole amount; witness said no, he did not want to give an order for any more; that he, R.,

had already accepted "the $197"; R. said he had seen B., who had said he would pay it if he got the order from witness; witness told him that if B. was willing to risk it witness ought to be, and to draw it up; witness signed it. R. said when he asked for the order of $204.41, that the $6.41 was the balance due on witness' account. This conversation as to the $204.41 order was some time after the conversation about the payment of the $197. Witness quit trading with R. about the time the raft was sold to Hunter.

On the cross-examination, he says: Thinks the conversation as to the first raft was in Roche's store; had been trading with R. before this time about sixty days; does not remember any one present at the time of the conversation, nor in what part of the store it was; does not remember "when the conversation occurred, but it was sometime between the selling of the first and second rafts." In a subsequent conversation he asked R. for a receipt, but did not get it. R. said B. had not paid him, and if he did not " he might have to come back on " witness. Thinks the second raft was sold in August; can't remember conversations had with other parties. Quit working with B. in August, 1880, and after this quit trading with R. Has had no conversation with any one as to what he was going to testify up here. Witness says he "is certain that he remembers the conversations had with R. and the circumstances surrounding them;" is as certain of the conversations as of the fact that he did not trade with R. after giving the order on B., in August, 1880; means he is certain about them from the best of his memory.

Broward, on being re-called, offered a receipt for $100 dated April 13, 1880, given by R. to him, and it was admitted in evidence, and he says he paid R. $100 in February, 1881, and $100 April 15, 1881, and the raft sold Au-

gust, 1880, to Hunter, brought $823.91, which money R. got, and out of these proceeds he directed R. to pay himself the $197. The $100 receipt of April 13th, was not made on the note or acceptance specially ; did not tell him to apply it ; the note and acceptance were charged up in his account. Does not think he told R. to apply the other payments ; the notes and accounts were all included and he wanted them paid.

Broward says the reason he did not get up the note and acceptance from R. was through carelessness, as R. had charged them in his, B.'s pass book, and gave him credit for the amount when he paid him. He had a pass book which R. kept, in which he entered the amounts from time to time as he got things or paid R. amounts.

Mr. Roche, being recalled, testified that he received a sixty-day note for the Hunter raft, and applied the same to the store account. He received the Clarke acceptance May 24th, 1881. Broward had not given him any instructions previous to this to apply any portion of the money paid by him to the payment of the acceptance. The raft was turned over to him August 13, 1880 ; there were no instructions given B., as to the application of any portion of the proceeds of this raft, and no portion thereof was applied to the payment of the Clarke debt or acceptance or the note ; had no instructions to apply any of it to the amount owing by Clarke. Clarke owed him August 16, 1880, $119.46 ; R. ceased to credit C. March 8, 1881 ; Clarke "took up" groceries and provisions with witness to the amount of $84.95 between August 16, 1880, and March 8, 1881 ; had no understanding with Clarke in August, 1880, that the amount he owed him was to be paid out of the raft sold to Hunter. The amount of $197.97, testified to as being paid to him as C.'s account, has not been paid to him as C. did not owe him the amount at that time, but only

$119.46 up to August 16, 1880. Does not remember any-thing about a conversation with C. that he owed witness a balance of $6.44, and that "I wanted him to give me an order on B." The Clarke acceptance was accepted by B. about the time it was given, on or about May 24, 1881. C.'s account had not been credited up to the time or before receiving this acceptance. None of the payments made by B. were applied to either the note or acceptance, and no part of either has been paid except the $11.66. Knows from his books that Clarke owed $119.46, August 16, 1880; is testifying from a statement of C.'s acco unt drawn off his ledger; remembers he ceased to credit Clarke March 8, 1881, from the statement from his ledger; knows that C. got pro-visions between August 16, 1880, and March 8, 1881, from the statement from his books; took the statement from his ledger, which is at the store; does not know that the Clarke acceptance appears on his ledger as of December 30, 1880; the note and acceptance were two separate matters; they may be on this bill of particulars, but they were never en-tered on the book of original entry—the blotter.

*A. W. Cockrell & Son* for Appellant.

*Hartridge & Young* and *R. M. Call* for Appellee.

Mr. Justice Raney delivered the opinion of the court:

I. The first point we consider in this case is the alleged *retraxit.* Appellant's counsel say " the account sued on is, as required by the statute, appended to the declaration, as the cause of action on the third and fourth counts," and "is made of many items of debit and credit, among the items of credit being the identical acceptance representing Clark's store account." " To this *account*," he further says, " thus appended to the plaintiff's declaration as his cause of action

claiming the balance due thereon, made up of debits and credits, the defendant" pleaded "never indebted," and "during the trial, while the plaintiff, as a witness on his own behalf, was being examined to prove *this* balance, the plaintiff, in open court, abandoned *this count.*" He then contends that " if the store account thus declared on embraced this acceptance," such acceptance " ceased to be a cause of action the moment the count embracing it was abandoned."

A copy of the acceptance, which is for $204.41, and dated May 24th, 1881, is filed with the declaration, as is also a copy of the note for $130, dated March 5, 1880; and in the account under date of December 30, 1880, we find the following charge against Broward : " Clark acceptance $204.41." The account books of the plaintiff being admitted, he had testified to the entries of July 15th and 17th, 1880, they being the first charges appearing against Broward on the account filed, and then it appears in the testimony that "the plaintiff here abandoned the store account and offered in evidence the two notes due and mentioned in the special counts in the declaration." We think it is evident that the " two notes '" are the note and acceptance described in the " special counts," and considering the entire action taken by the plaintiff, as shown by the statement quoted from the testimony, it discloses as much of an intention to pursue any right growing out of the note and acceptance transaction as it did to abandon pursuit of any part of the store account. It seems impossible to give any other effect or purpose to his action. An abandonment of the common counts accompanied with an expressed retention of a pursuit of the special counts would leave the special counts standing good for whatever they cover and show an intention to abandon only so much as is not covered by the special counts. We do not see any intention

to abandon any part of the suit except such as covered only the store account, exclusive of the note and acceptance. The pleadings and causes of action filed so far as necessary to recover on the note and acceptance transactions remained intact and sufficient.

Taking this view of the case it is unnecessary to consider in this connection the effect of the alleged *retraxit*. We, however, will discuss it further in the third paragraph of this opinion.

II. The referee found that the note had seen paid by the defendant. "This," says he, in his finding, " is easily ascertained by the fact that when the defendant was credited with the payment of $823.91, as shown by the bill of particulars filed with the plaintiff's declaration, credited August 13th, 1880, the payment at this time exceeded all the indebtedness of the defendant to the plaintiff, including this note, and left a balance due the defendant in the hands of the plaintiff." He finds that the acceptance has not been paid. " This," he says, " is shown by the fact that no payment was made by the defendant to plaintiff after accepting the draft." Judgment was given for the amount of the draft, principal and interest. The defendant moved for a new trial on the ground that the finding and judgment are unsupported by the testimony, and against the weight of evidence, and contrary to law.

The plea was payment, and the burden was upon the defendant to sustain his plea. We have considered the testimony very carefully, and it is set forth fully in the statement of the case. Not only is there direct conflict as to the application of the moneys received by Roche to the payment of the acceptance, but also as to the fact that Broward ever directed any such application and also as to the time covered by the Clarke account, as to conversations,

and in fact as to almost every, if not every, material point involved in the issue as to such payment.

Where the evidence is contradictory, making it the duty of the jury to decide upon the credibility of the witnesses, the court will not set aside the verdict as against the weight of evidence. P. & G. R. R. Co. vs. Nash, 12 Fla., 497. The court will not set aside the verdict of a jury upon questions of fact where there is a conflict of evidence, unless it may be well assumed from the circumstances of the case that some improper influence has been brought to bear to effect such jury contrary to the right; Nickels & Gautier vs. Mooring, 16 Fla., 76 ; or unless the verdict is so clearly and manifestly against the weight of evidence as to suggest the presumption that it was produced by influences other than a proper consideration of the testimony ; John D. C. vs. State *ex rel.*, 16 Fla., 554; or unless it appears that the jury were influenced by some improper motive. Mays vs. Hynote, 16 Fla., 673. See also 16 Fla., 676. A verdict will not be set aside as against the weight of evidence when such evidence is so contradictory as to make it the duty of the jury to decide upon the credibility of the witnesses, although such evidence seems to preponderate against their finding, unless there is ground for belief that the jury acted through prejudice, passion, mistake or other cause which should not properly control them; (McMurray & Brittain vs. Basnett, 18 Fla., 609;) or unless the preponderance of evidence is such that the verdict must have been produced by consideration other than a due respect to the evidence. Huling vs. Fla. Savings Bank, 19 Fla., 695. A verdict is not against evidence where there is legal evidence to support it, though there be conflicting testimony upon material points. Id., 695.

The same effect is to be given to the finding upon the facts by a referee, as to a verdict of a jury. McClenny vs.

Hubbard, 20 Fla., 541; 15 Barb., 28; 16 Barb., 146; 35 Barb., 602.

In the light of the rules laid down above, we do not see how we can grant a new trial. There is testimony sufficient to support the finding as to the acceptance, and there is no such preponderation of testimony against this conclusion as to raise the belief that the referee acted under improper influences from prejudice, passion or other cause which should not properly control him. The question is not simply whether this court, sitting in his place, would, looking at the record before us, have found the same conclusion. He had the witnesses before him—a very material consideration.

The Supreme Court of Maine, in the case of Crocker et ux. vs. McGregor, decided in June, 1884, say :. " We have carefully examined the evidence reported, upon which the motion to set aside the verdict is based, and while we think the verdict might properly have been for the defendant, still there is sufficient in favor of the plaintiff, if the jury believe it, to authorize the verdict for her. We cannot say that the verdict is so clearly wrong as to require the court to set it aside."

The reasons given by the referee for his findings do not show that he did not consider the whole testimony, nor would an erroneous reason, not showing that the testimony was not considered, vitiate a finding which the testimony, applying the rules of law, laid down above, would sustain.

The referee does not find that the balance left in plaintiff's hands after the payment of $823.91 by defendant, was not absorbed by the subsequent items in the store account, nor does he say that he relies upon the bill of particulars (store account,) alone as showing that no payment was made to the plaintiff after the acceptance of the draft

by Broward. There is testimony, entirely outside of the store account, to such effect.

In considering this case it is not to be forgotten that the plea to the acceptance is payment, and that the admissions of such a plea are that the acceptance itself was a valid cause of action, and the sole avoidance relied on is payment. It will be remembered, too, that the plea to the counts covering the entire open account and all its items as such, was *never indebted*.

III. A *retraxit* "is where a plaintiff cometh in person in court, where his action is brought, and saith he will not proceed in it, and this is a bar to that action forever. It is so called because it is the emphatical word in the Latin entry." Tomlin L. Dict., Title, *Retraxit ;* Abbott's Law Dictionary, *Retraxit ;* Lown vs. McMillan, 8 Penn., St., 163. It differs from a *nolle prosique* in that it is " a bar to any future action for the same cause, whereas the *nolle prosique* is not unless made after judgment." It is said to be absolute in England.

Assuming that the course taken by the plaintiff here would preclude any future action to *recover* the store account, we do not understand from anything we have been shown or can find that the effect of such abandonment or *retraxit* precluded the plaintiff from showing that the moneys received by him had been applied to the account or otherwise, and not to the note and acceptance, and that the latter had not been paid. That the account had been paid may have been the very reason why it was abandoned. The fact that a cause of action has been paid is good reason why a party should forever disclaim a right to sue on it, but this does not estop him from asserting that it once existed and has been paid.

IV. The only remaining point to be discussed is that as to costs. Rule 61 of the Common Law Circuit Court

Rules provides that " no costs shall be allowed on *taxation*, to a plaintiff upon any counts or issues upon which he has not succeeded, and the costs of all issues found for the defendant shall be deducted from the plaintiff's costs." This rule applies to the taxation of costs. An error in taxation of costs is not a proper ground for a new trial, nor is it among those urged before the referee. If there has been any error in the *taxation*, we do not discover anything in the record showing it, even assuming that this is the proper way to reach the error. There is nothing to show the *items* of costs taxed.

The judgment is affirmed.

The appellant then filed a petition for a re-hearing, which is as follows:

*To the Honorable, the Supreme Court of Florida:*

Your petitioner, M. L. Broward, by his Attorneys, A. W. Cockrell & Son, exhibits most respectfully his petition for a rehearing in said cause.

In submitting this · petition, counsel for petitioner beg leave to quote the language borrowed by the Supreme Court of Pennsylvania in the case of " Roberts vs. Beatty," 2 Pinrose and Watts, 63; S. C. 21 Amer. Decisions, 413. " Counsel must present the case to the court, investigate the principles upon which it depends, produce authorities and trace out the analogies, or the court are not responsible for a correct decision."

If the decision in the opinion filed herein be not a correct decision; and if it be that we, by an omission of our duty, have incurred a just responsibility for the error, we bespeak the forbearance if not indulgence of the court, as we make atonement for that omission.

In the opinion delivered this court says: " The referee does not find that the balance left in the plaintiff's hands,

after the payment of eight hundred and twenty-three ninety-one one-hundredth dollars, was not absorbed by the subsequent items of the store account."

Conceding that the referee does *not* find that this balance was *not* absorbed by the subsequent items of the store account; and further conceding that the *retraxit* while destroying the store account, as an *affirmative* cause of action, did not extinguish the right of the plaintiff to show that certain moneys ascertained to be in his hands, due to the defendant, were absorbed by the purchase of goods of him by the defendant subsequently; it is submitted to the court, it was the duty of the referee to *find*, affirmatively, as the burden was on the plaintiff affirmatively *to show*, that this balance in the hands of the plaintiff, thus judicially ascertained to be due from the plaintiff to defendant, *was* absorbed by purchases subsequently made of the plaintiff by the defendant. Indeed, the propriety of the finding by the referee, that the defendant, Broward, owed the plaintiff, Roche, the exact amount of the principal and interest, represented by the acceptance, *and no more*, depends upon the fact and cannot be made out *in the absence of the fact*, that the purchases made of the plaintiff by the defendant, subsequently to plaintiff's receipt of the $823.91, represented in amount *precisely this balance and no more*.

In this view of the question, the direct conflict, real or supposed, in the evidence, "as to the application of the moneys received by Roche, to the payment of the acceptance, and as to the fact that Broward ever directed any such application, and also as to the time covered by Clarke's account; and in fact as to almost every, if not every, material point involved in the issue as to such payment," becomes wholly immaterial. And in this light it is unnecessary to inquire whether the referee relied alone upon the bill of particulars " as showing no payment was made to

the plaintiff, after the acceptance of the draft by Broward;" nor is it material, if such testimony exists, that "there is testimony outside of the store account," that *no such payment* was made. Conceding everything advanced by the court, in the opinion, in this behalf, *and still the fact remains,* as judicially ascertained and reported by the referee, when the $823.91 was received by Roche, "the payment at this time exceeded all the indebtedness of the defendant (Broward) to the plaintiff (Roche), including the note, and left a balance due the defendant (Broward) in the hands of the plaintiff (Roche).

What boots it, then, that *no payment* was made by Broward to Roche *after* the date of the acceptance? It is clear before the draft was given there was a balance in Roche's hands, *after* deducting the note and everything else Roche claimed. We concede, if the acceptance stood alone, some presumption might arise that it represented the balance *then due* from Broward to Roche; and that in fixing as between the parties the amount of the acceptance, the *balance* theretofore in the hands of Roche was considered and covered. But in this case, all the witnesses, Clarke, Broward and Roche, swear that this acceptance stood for and was intended to stand for *precisely* the amount of Clarke's account with Broward, nothing more, nothing less. This acceptance then had no relation, *nor could it have any relation,* to the antecedent state of accounts between Broward and Roche. Again, conceding, as is argued by the court, that the plea of payment interposed by Broward was in law an admission that the acceptance when made was a valid cause of action by Roche, in whose favor it was drawn, against Broward, the acceptor; *yet,* if the evidence shows, and the referee finds, there was a balance of money in the hands of Roche, in whose favor the acceptance was drawn, in favor of Broward, the acceptor; and the acceptance as to its

amount and consideration was *wholly* separated from ante-cedent transactions between Roche and Broward, as is un-questionably true in this case, we submit that Roche can-not recover from Broward, *in action of assumpsit*, the amount of this acceptance and interest thereon, discharged of lia-bility to account for money, affirmatively shown by the evi-dence, and by the report of the referee, to have been in his hands *prior to* said acceptance. And we submit the *burden* was upon Roche, in this state of the case, in this state of the evidence and findings of the referee, to prove that this balance to the credit of Broward had been displaced by farther or other transactions between the parties. And the *quantum* or *degree* of proof thus *put upon him* was not les-sened by the fact that he sought, if such were the fact, not a recovery from the defendant upon the store account, but *to absorb* by the use of the store account a credit otherwise due from him to the defendant. Was there any such evi-dence of farther or other transactions between the parties, influencing the mind of the referee, as shown by the evi-dence he reported, or by his findings thereon? Certainly not. The referee, after ascertaining and judicially declar-ing there was a balance in Roche's hands due Broward on the 13th day of August, 1880, proceeds to say: " I find that the draft of J. H. Clarke, drawn on M. L. Broward, the defendant, in favor of John B. Roche, plaintiff, and ac-cepted by M. L. Broward, dated May 24th, 1881, has not been paid by the defendant to the plaintiff, and that the defendant is still indebted to the plaintiff for said acceptance amounting to two hundred and four 41-100 dollars; this is shown by the fact that no payments were made by the de-fendant to the plaintiff after accepting said draft. I find, therefore, that the defendant is indebted to the plaintiff in the sum of two hundred and four 41-100 dollars with eight

31

per cent. interest from May 24th, 1881, to the present date.

We submit, in conclusion, that the plaintiff below offered no evidence displacing, or tending to displace, this sum or balance, as a credit adjudged to Broward, before said draft was accepted; nor did the referee ascertain in his findings that this credit was displaced. He found that no payments were made by the defendant to the plaintiff after the acceptance; and upon *this finding and no other* adjudged the entire amount of the acceptance and interest was due from defendant to plaintiff.

MR. JUSTICE RANEY delivered the opinion of the court upon petition for a rehearing:

After the alleged *retraxit* the action stood on the note and acceptance. The plea was payment and unquestionably the burden was upon the defendant to prove it. The plaintiff was entitled to judgment for so much as there was no proof of payment. Roche distinctly says that the Hunter draft of $823.91, and other payments made by Broward, were in fact applied to the store account against Broward, and that none of them were in fact applied to either the note or acceptance, except the balance of $11.66 which he says he applied to the note. The store account outside of the note and acceptance was $1,015.25, the note $130, and the acceptance, $204.41. The refereee holds that as the payments up to and including that of $823.91, (the Hunter draft) made August 13th, 1880, exceeded all the then existing indebtedness of Broward to Roche, and that the note was a part of such indebtedness, that they operated in law as a payment of the note. The referee thus practically denies Roche's claim to withhold any of the funds from the then existing indebtedness, for application to future purchases on the open account. But he finds, in accordance

with Roche's testimony, that the Broward acceptance was not given till after all the payments had been made. This finding is also sustained by the date of the acceptance, May 24th, 1881. The amount of the account, deducting both the note and acceptance, was $11.66 less than all the payments, they amounting to $1,026.91; but assuming the note to have been satisfied in law as was held by the referee, there remained a balance of $118.34 unpaid on the account, with nothing in R.'s hands to apply to the acceptance when he should receive it, and of course with not even the $11.66 balance which he attempted to apply to the note.

The proposition of counsel that the propriety of the finding of the referee that Broward owed Roche the exact amount of the principal and interest represented by the acceptance " depends upon the fact and cannot be made out in the absence of the fact that the purchases made of the plaintiff by the defendant subsequently to the plaintiff's receipt of the $823.91 represented precisely this balance," (*i. e.*, the balance remaining in R.'s hands after the payment in August, 1880, of the $823.91,) " and no more," is to our minds wholly untenable. It is shown that the accruing store account not only absorbed the balance remaining in R.'s hands to B.'s credit after the payment of the $823.91, but that it ran on and absorbed the other payments afterwards made by B., the last of which B. says was made as late as April 15th, 1881. Roche distinctly says that the payments were applied to the store account, and we find that its last item is April 1st, 1881. Had there not been the " retraxit " as to the open account, the referee, believing, as he evidently did, Roche's statements, for no other theory is consistent with his findings, must have given judgment for not only the acceptance, but the balance of the open account also. It was not necessary that there should be no balance remaining due on the store account to authorize a

recovery on the acceptance. Had there moreover, on the other hand, have remained in Roche's hands, when he received the acceptance, a balance over and above the store account, such balance would have gone in full or partial payment of the acceptance, according to the amount of such balance.

The finding of the referee on the acceptance necessarily involves the conclusion that he was satisfied that the balance to Broward's credit in August and all other future payments were absorbed by future purchases in the open account, for otherwise he could not have found for the plaintiff without entirely repndiating the theory on which he found the note had been paid. We see no error in our former conclusions.

Petition for a rehearing is denied.