CAMPBELL PRINTING PRESS AND MANUFACTURING COMPANY, APPELLANT, VS. WHITFIELD WALKER, ASSIGNEE, APPELLEE.

1. An agreement in writing to sell personal property, the title to which is reserved by the seller until the purchase money is paid by the buyer, is a conditional sale, and does not vest title in the buyer until the performance of the condition, to-wit : the payment of the purchase money, notwithstanding that at the time of making said agreement, possession of the property is delivered by the seller to the purchaser.

2. Neither the act of the Legislature of January 30, 1838, nor of January 8, 1853, (McClellan's Digest, p. 765, secs. 1 and 2,) require such an instrument to be recorded.

3. It was not the intention of the act of January 30, 1838, nor of January 8, 1853, (McClellan's Digest, p. 765, secs. 1 and 2,) to give any other construction to an instrument in writing, than the parties thereto intended.

4. An agreement, such as is described in the first head-note, is valid, as against subsequent creditors and *bona fide* purchasers for valuable consideration, without notice.

5. *Quere*, as to whether such an instrument is not void as to creditors and *bona fide* purchasers for a valuable consideration, without notice, if not recorded in two years from the delivery of possession of the property, under section 4, act of January 28, 1823, as amended by act of January 7, 1859 ; McClellan's Digest, p. 212, section 4.

6. An assignee, to whom property, held by the buyer as described in the first head note, is assigned for the purpose of paying the debts of the buyer, is neither a creditor nor *bona fide* purchaser.

7. On a conditional sale, where the seller reserves title to the property until payment of purchase money, on default of payment thereof, as stipulated, the seller can maintain an action of replevin therefor.

Appeal from the Circuit Court for Duval county.

The facts of the case are stated in the opinion.

*M. C. Jordan, A. W. Cockrell & Son* and *Fleming & Daniel* for Appellant.

*Hartridge & Young* for Appellee.

Is the contract under which plaintiffs claim in its legal effect a mortgage ? Whether the contract in question is, or is not a mortgage, is to be determined, not by any name the parties may give to the instrument, nor in any particular provision therein contained, but in the ruling intention of the parties. It is the legal effect of the whole in-

strument which is to be sought for. Heryford vs. Davis, 102 U. S., 235 ; Jones on Mortgages, Vol. 1, sec. 253.

If, by this contract and the notes therein mentioned, executed by the Ashmeads, the Ashmeads became indebted to the company and the latter retained the legal title as a security for the said indebtedness of the Ashmeads, then in its legal effect it is a mortgage. It seems to us impossible to read the contract without coming to the conclusion that the Ashmeads became the debtors of the company for the amount of the notes, and the company retained a lien for the security of the debt.

If the contract had provided for a return of all the unpaid notes upon a breach of the condition, then the company might well contend that it was a conditional sale. But it will be seen that there is no such provision, and the testimony of Jordan, the attorney for the company, and his clerk, Fox, shows that after default there was a demand of payment and an effort to collect the debt from the Ashmeads before the assignment, and from the assignee afterwards, accompanied with threats to take the property unless the debt was paid.

Counsel for appellant endeavor to break the force of the case of Heryford vs. Davis by arguing that the court based their decision upon the clause providing for a sale of the property and payment of the surplus to the debtor. A careful reading of the case will show that the court held the contract in that case to be a mortgage *because it treated the notes, given for the sum agreed on as the price of the cars, as a debt absolutely due to the vendors, and the cars as a security for the debt.* The clause in the contract in that case so dwelt upon by counsel is only one among others which led the court to the conclusion that the notes were a debt absolutely and the cars a security. We submit that it is too plain to need argument ; that the notes given by the Ash-

meads became a debt absolutely, and the company, by the contract in question, retained the legal title as a security for the debt, hence it is a mortgage. Jones on Mortgages, Vol. 1, sec. 258, and authorities cited in note; Heryford vs. Davis, 102 U. S., 235.

In all doubtful cases the court will construe the contract to be a mortgage rather than a conditional sale. Jones on Mortgages, sec. 258, and authorities cited in note.

The question as to whether a contract is in its legal effect a mortgage or a conditional sale is of greater importance in this State than in other States by reason of our statute prohibiting the mortgagee from acquiring possession of the mortgaged property except by purchase at foreclosure sale. But for the statutes the mortgagee could after default recover personal property mortgaged in an action of replevin and real estate in an action of ejectment.

The true and only test of the question of mortgage or no mortgage is, did the contract and notes create the relation of debtor and creditor between the Ashmeads and the company. Jones on Mortgages, sec. 258.

The assignee represents the creditors of the Ashmeads, and not the Ashmeads, as contended by the counsel for appellant.

THE CHIEF-JUSTICE delivered the opinion of the court:

The appellant brought a suit in the Circuit Court of Duval county against the appellee for the recovery of a printing press and appurtenances. There was a joinder of issue on the plea of defendant, denying the ownership of the plaintiff and the plea of "not guilty." Verdict and judgment for defendant.

The plaintiff, to sustain his title to the property, introduced the following instrument in writing:

" Campbell Printing Press and Manufacturing Company, 45 Beekman St., New York.

" 145 Monroe St., Chicago.
    " Factories:
    " Taunton, Mass.,          No. 9835.
    " Lawrence, Mass.

" The Campbell Printing Press and Manufacturing Company hereby agree to sell at the sum of $2,340 (two thousand three hundred and forty dollars) to Messrs. Ashmead Brothers, Jacksonville, Florida, one of their Number Two (2) Two Revolution Intermediate Printing Presses, to be delivered boxed on cars at their factory about the fifteenth of June, 1883, complete in all its parts, including one (1) set of heavy newspaper chases to fit the bed of press, all necessary wrenches, overhead steam fixtures, cylinder packing, one (1) set complete rollers, and one (1) extra set of stocks.

" Messrs. Ashmead Brothers hereby agree to buy said press as above specified and to pay therefor, on receipt of bill of lading of same, cash $250, (two hundred and fifty dollars) and the balance in payments, evidenced by notes of the purchaser, bearing legal interest as follows: Three hundred and forty dollars ($340), payable thirty days after delivery of bills of lading; two hundred and fifty dollars ($250), payable three months after delivery of bill of lading: two hundred and fifty dollars ($250), payable six months after delivery of bill of lading; two hundred and fifty dollars ($250), payable nine months after delivery of bill of lading; two hundred and fifty dollars ($250), payable twelve months after delivery of bills of lading; two hundred and fifty dollars ($250), payable fifteen months after delivery of bills of lading; five hundred and fifty dollars ($550), payable eighteen months after delivery of bills of lading.

" The Campbell Printing Press and Manufacturing Company hereby agree to send a man to superintend the erection of said press free of charge, provided Messrs. Ashmead Brothers pay the passage of said man from New York to Jacksonville and back and his living expenses during such time and while he is engaged in erecting said press.

" The purchaser to deliver said notes with the cash, and to furnish at his own cost proper and suitable foundations. The purchaser agrees to insure said press, (loss, if any, payable to the Campbell Printing Press and Manufacturing Company as its interest may appear,) and to deposit such policy with the seller,

" It is also agreed that the title to the above described property shall remain in the seller until the purchase price thereof, and the interest thereon, has been fully paid, and in case of any default in any of the terms of this contract the seller shall have the right to take immediate possession of said property.

"CAMPBELL PRINTING PRESS & MANUFACTURING COMPANY,
"By A. YORGE, JR.
"ASHMEAD BROS.

" May 8th, 1883."

It appeared from the evidence that possession of the press was delivered by the appellant to the Ashmead Brothers, and that they retained the same from the time of the purchase thereof until the 24th day of April, A. D. 1884, when they made an assignment of all their property of every kind and description to the defendant, Whitfield Walker, for the payment of their debts, and said defendant took possession of and claimed the press and appurtenances under the assignment. It appeared also that they had paid to the appellant four or five hundred dollars of the purchase money. The court, at the instance of the de_

27

fendant, charged the jury as follows: "1st. The written contract between the plaintiff and the Ashmead Bros., is in effect a chattel mortgage, and if the jury find from the evidence that the only title of plaintiff to the property sued for is under the said written contract then the plaintiff is not, and was not at the commencement of this action, entitled to the possession of said property, and you must find for the defendant.

"2d. If the jury find, from the evidence, that the only title of the plaintiff to the property sued for is under the written contract with the Ashmead Bros., which has been offered in evidence, then the plaintiff is not the owner of the property and cannot recover.

"3d. That the contract between the plaintiff and the Ashmead Bros., offered in evidence by the plaintiff, is in its legal effect a chattel mortgage, and is void if it has not been recorded."

To which plaintiff excepted.

The question here presented is, the construction of the agreement between the appellant and the Ashmead Bros. Is it a mortgage or a conditional sale? If it was the former, it would result that the plaintiff cannot maintain this action, because a mortgage does not vest title in the mortgagee so as to enable him to bring an action at law thereon, nor could he, if the instrument is a mortgage, maintain any action thereon, if not recorded, against a judgment creditor or *bona fide* purchaser for a valuable consideration without notice. If a conditional sale only, it was a valid instrument, at least so far as the immediate parties thereto are concerned, and many high authorities hold its validity against subsequent creditors and *bona fide* purchasers upon the well known maxim of *nemo dat quod non habet*. That such an instrument is a conditional sale, and that the payment of the price is a condition precedent

and that the property will not pass until the fulfillment of the condition, even though the goods may have actually been delivered into the possession of the buyer, has long been held in the English courts, and the courts of this country, with the exception of Pennsylvania, Kentucky, Alabama, and the Supreme Court of the United States.

The authorities all agree, that a stipulation reserving title until payment, though possession is delivered to the buyer, is valid as between the parties. See Benjamin on Sales, (3d Ed.,) Vol. 1, p. 397. The only point of difference between the courts, is as to the validity of such a stipulation against a *bona fide* purchaser, or against a creditor, when claim is based on the statute laws of the respective States requiring registration of instruments whereby money is secured to be paid, and the failure to record such instrument in accordance therewith. We think it will not admit of doubt that the agreement was as between the Campbell Printing Press and Manufacturing Company, and the Ashmead Bros., a valid conditional sale. This view is sustained fully by a decision of our own court, in the case of the Jackson Sharpe Company vs. Holland, in 14 Fla., p. 384, to which reference on another point will be made hereafter. If it was a valid conditional sale, the question arises, whether by our registration laws such an insrument was required to be recorded. The statutory regulations are as follows : (McC.'s Dig., secs. 1 and 2, p. 765,) "Section 1, all deeds of conveyance, bills of sale, or other instruments of writing, conveying or selling property, either real, personal or mixed, for the purpose, or with the intention of securing the payment of money, whether such deed, bill of sale, or other instrument be from the debtor to the creditor, or from the debtor to some third person or persons in trust for the creditor, shall be deemed and held as mortgages, and shall be subject to the same rules of foreclosure,

to the same regulations and restrictions as now are, or may hereafter be, prescribed by law in relation to mortgages."

"Sec. 2. All deeds, obligations, conditioned or defeasible, bills of sale, or other instruments of writing, made for the purpose, or with the intention of securing the payment of money, whether such instrument be from the debtor to the creditor, or from the debtor to some third person or persons in trust for the creditor, shall be deemed and held as mortgages, and shall be subject to the same rules of foreclosure, to the same regulations, restrictions and forms as are now, or hereafter may be, prescribed by law in. relation to mortgages ; but in no case shall the obsolete and antiquated claims in favor of the mortgagee to the right of possession of the property specified in said mortgage, or any part thereof, by reason of any alleged failure of payment, or breach of promise, or other default, be recognized or admitted in a court of justice in this State, either by judge or jury, until all other steps and forms prescribed by law for the foreclosure of mortgages shall be complied with and observed."

These statutes in declaring that " all deeds of conveyance, bills of sale, or other instrument in writing," in the first section, and " all deeds, obligations, conditioned or defeasible, bills of sale, or other instruments in writing," in the second section, " made for the purpose or with the intention of securing the payment of money," should be decreed and held as mortgages, evidently contemplated the existence of a debt and the execution by the person owing the debt of one of the kinds of instrument mentioned in the statute upon his own property, that the debtor and the owner of the property should be the same person. The first section says, " whether such deed, bill of sale, or other instrument in writing be from the *debtor* to the creditor, or from the debtor to some third person in trust for the creditor ;" the

second uses the same language. Ownership of the property upon which a mortgage is made, or which is the subject matter of any of the instruments mentioned in the statute, is indispensable to the creation of a lien on it by the person seeking to charge it. The statute does not cover a case, or require registration of an instrument where the debt is due to the person who is the owner of the property and who reserves the title until the debt is paid. If the agreement is valid as between the parties, as between them the seller is the owner and the debtor would lack the ownership that is necessary to enable him to mortgage it.

It was not the purpose of the statute to give any other construction to an instrument than what the parties to it intended it should be. We think that the agreement was a valid conditional sale, and that being such that the statutes above quoted had no reference to such a transaction, and that it was not necessary to its validity that it should be recorded.

It would seem that such an instrument as against creditors and *bona fide* purchasers would be void under the act of January 28, 1823, as amended by act of January 7, 1859, (McO's. Dig., 212, sec. 4,) if not recorded in two years after delivery of possession to the buyer.

The only remaining question is, is such a conditional sale as the one under consideration valid as to subsequent judgment creditors and purchasers for valuable consideration without notice?

This is a question upon which there is great conflict in the authorities.

In the case of the Jackson Sharpe Company vs. Holland, *supra*, Holland was the purchaser at a judicial sale of property in possession of purchaser in which the seller had reserved title. Holland insisted that he had no notice, either actual or constructive, of such an agreement. The court de-

cided that under these circumstances that Holland acquired no title to the property as against the plaintiff.

This decision, though as we have said there is much conflict in the authorities, is sustained by numerous and well considered decisions in many States and seems to us to be sound on principle. The property not having vested in the Ashmeads, though delivered to them, they could not sell what they did not own, *nemo dat quod non habet.* In this case, if we were to hold that a *bona fide* purchaser from a purchaser in possession from a seller who reserved title until payment of purchase money took a good title, it would not benefit the defendant in this case. He is in no sense a *bona fide* purchaser. He can have no greater rights in the property than the Ashmeads, whose assignee he is. They could not dispose of the property in payment of their debts.

Judgment reversed and new trial granted.