Wadleigh vs. Buckingham.

WADLEIGH, Appellant, vs. BUCKINGHAM, Respondent.
WADLEIGH, Respondent, vs. BUCKINGHAM, Appellant.

*September 5 — September 29, 1891.*

*Conditional sale, or chattel mortgage? Voluntary assignment by vendee:
Replevin: Demand: Damages: Amendment of pleading.*

1. A written contract states that the plaintiff "has and hereby does
   sell and convey and . . . doth deliver" to V. & Co. certain
   lumber, and provides that thereafter such lumber shall be at the
   risk of the vendees, and that any loss or damage shall be borne by
   them; that they shall at certain times render to the vendor state-
   ments of sales, and pay over all moneys received thereon to be ap-
   plied on the purchase price, and shall thereafter pay the balance of
   such price; that they shall insure the lumber and assign the poli-
   cies to the vendor as collateral security; and that the title and
   right of possession of the lumber shall be and remain in the vendor
   until the entire amount due is paid. *Held*, that these provisions are
   not inconsistent; that the contract is a conditional sale and not a
   chattel mortgage; and that, having been filed in the proper office
   and there being no fraud, it is valid.

2. The vendees having, before payment of the full purchase price,
   made an assignment for the benefit of creditors, the vendor was en-
   titled, as against the assignee, to the possession of the lumber re-
   maining unsold.

3. There being evidence tending to show that the assignee took posses-
   sion of the lumber immediately after the assignment, in May, and
   distinctly denied the plaintiff's right to it, and forbade his interfer-
   ing with it, and that the plaintiff then made what was equivalent
   to a formal demand for the lumber, the question whether there
   was not a conversion and a demand at that time should have been
   submitted to the jury, although the complaint alleged that the as-
   signee took possession in the following November. The pleading
   might be amended to conform to the proof.

4. The measure of plaintiff's damages for the unlawful detention of
   the lumber by the assignee is the legal interest on its value for the
   time of such detention, and compensation for any depreciation in
   value.

APPEALS from the Circuit Court for *Portage* County.
Replevin for a large quantity of pine lumber, alleged to
be of the value of $7,181.67, and which it is alleged the de-

fendant wrongfully took from the possession of the plaint-
iff on November 2, 1889, and has ever since unlawfully
detained, to the plaintiff's damage $2,000.

The defendant, both as a defense and as a counterclaim,
alleged in substance that on May 23, 1889, the firm of A. P.
Vaughn & Co. made a voluntary assignment to him, and
that as their assignee he immediately took possession of
the lumber in question as the property of said firm, and
has ever since held possession thereof; that at the time of
the assignment said lumber was in the possession of Vaughn
& Co., and for more than a year had constituted a part of
their stock in trade as lumber dealers; that the plaintiff
claims to own the lumber by virtue of a certain agreement
between himself and Vaughn & Co., made December 27,
1887,— the terms of which are sufficiently stated in the
following opinion; that after the execution of that agree-
ment the lumber was taken by Vaughn & Co. to their
lumber yard in the city of Stevens Point, and became a
part of their stock in trade, with the knowledge and con-
sent of the plaintiff; that the plaintiff permitted Vaughn
& Co. to make sales from said lumber, and that they ap-
plied a part at least of the proceeds therefrom upon their
indebtedness to the plaintiff; that Vaughn & Co. did not
file with the city clerk of Stevens Point any statement of
the sales so made by them or the amounts to be applied on
said indebtedness, nor of the total valuation of the stock
added, as required by ch. 241, Laws of 1887; that more
than one year had elapsed from the making of said contract,
before said assignment, and any lien upon the lumber
which the plaintiff may have had by virtue of said con-
tract had ceased and become null and void; and that said
contract, so far as the same constituted a lien on the lum-
ber, is void and fraudulent as to the creditors of Vaughn &
Co., who are represented by the defendant as assignee, be-
cause Vaughn & Co. did, with the consent of the plaintiff,

Wadleigh vs. Buckingham.

make sales from the lumber and used a part of the proceeds in their business without paying the same upon their indebtedness to the plaintiff. The prayer of the answer is that the contract, so far as it constituted a lien on the lumber, be set aside and canceled as fraudulent and void as to the creditors of Vaughn & Co., and for general relief.

The plaintiff replied, denying that at the time of the assignment by Vaughn & Co. the property was in their possession, and alleging that it was in the possession of the plaintiff and that the defendant then took it from his possession. He admits that the lumber had been kept in the lumber yard of Vaughn & Co., but alleges that it had always been piled and kept separate and distinct from their general stock in trade, and that it never became a part thereof. He also denies that he ever permitted Vaughn & Co. to make sales and apply any part of the proceeds for their own benefit.

The issue raised by the counterclaim and reply was tried by the court, which found as facts that at the time of the making of the assignment by Vaughn & Co. the lumber was in their possession; that on the day of such assignment, but after the filing of the papers therein, the plaintiff took possession of the lumber by marking it, and that immediately thereafter the defendant, as assignee, took possession thereof, as being the property of Vaughn & Co., and has since held the same; that the contract of sale from the plaintiff to Vaughn & Co., containing the condition that the title and right of possession should remain in the plaintiff until the purchase price was fully paid, was duly filed in the office of the city clerk of Stevens Point on April 16, 1888; that prior to April 1, 1888, the lumber had been placed in the lumber yard of Vaughn & Co., but that it had at all times been kept wholly separate from their general stock in trade; that there was no agreement between the plaintiff and Vaughn & Co. by which said firm might

use any part of the proceeds of the sales of said lumber for their own benefit, and that the plaintiff never knew of or consented to any such use; that of the purchase price of the lumber there remained due to the plaintiff at the time the action was commenced, the sum of $15,667.47, which is still unpaid.

As conclusions of law the court held that the contract between the plaintiff and Vaughn & Co. was a conditional sale of the lumber, and not a chattel mortgage thereof; that the legal title to the lumber remained in the plaintiff; that the conditions of the sale had never been complied with; that the contract of sale was not fraudulent or void as to the assignee or creditors of Vaughn & Co.; and that the defendant was not entitled to any relief.

A jury having been impaneled to assess the plaintiff's damages, the court directed a verdict to the effect that the plaintiff is the owner of the property; that the defendant unlawfully detains the same; that the value of the property is $7,208.41; and assessing the plaintiff's damages by reason of such detention at the sum of six cents. From the judgment entered upon such verdict in favor of the plaintiff, the defendant appeals. The plaintiff also appeals from so much thereof as gives him but six cents damages.

For the plaintiff there were briefs by *Raymond & Brennan,* and oral argument by *J. H. Brennan.* They argued, among other things, that the contract is a bill of sale, not a mortgage. *W. W. Kimball Co. v. Mellon,* 80 Wis. 133; *Lillie v. Dunbar,* 62 id. 198; *Red Wing Mfg. Co. v. Moe,* id. 240; *Rawson Mfg. Co. v. Richards,* 69 id. 643; *Thomas v. Richards,* id. 671; *Mershon v. Mooers,* 76 id. 502; Chitty, Cont. (10th Am. ed.), 407, and note; *Lickbarrow v. Mason,* 1 Smith's L. C. (8th ed.), 1159; 1 Benj. Sales (Corbin's ed.), sec. 425; R. S. sec. 2317; *Harkness v. Russell,* 118 U. S. 663; 29 Cent. L. J. 27; 6 Lawson, Rights & Rem. sec. 3076; Jones, Chat. Mortg. sec. 26; *Brewster v. Baker,* 20 Barb.

364; *Grant v. Skinner*, 21 id. 581; *Frank v. Batten*, 1 N. Y. Supp. 705; *McComb v. Donald's Adm'r*, 82 Va. 903; *C. Aultman & Co. v. Olson*, 43 Minn. 409; *Russell v. Harkness*, 4 Utah, 197; *Dearborn v. Raysor*, 7 Pa. Co. Ct. Rep. 373; *Pate v. Oliver*, 104 N. C. 458; *Fleury v. Tufts*, 25 Ill. App. 101. Conditional sales of merchandise with the vendee in possession and allowed to sell in due course of business and apply the proceeds to the vendor's debt, are held valid, as against the assignee and creditors, as to goods remaining, in *Lewis v. McCabe*, 49 Conn. 141; *Armington v. Houston*, 38 Vt. 448; *Burbank v. Crooker*, 73 Mass. 158; *Cole v. Mann*, 62 N. Y. 1; *Baring v. Galpin*, 18 Atl. Rep. (Conn.), 266–272; *Wheeler v. N. H. W. Co.* 16 id. 393.   The unlawful detention by the assignee commenced on May 23, 1889, and under the circumstances no formal demand by the plaintiff was necessary.   *Oleson v. Merrill*, 20 Wis. 462; Wells, Replevin, secs. 346, 352, 359; *Mitchell v. Williams*, 4 Hill, 16; *Holbrook v. Wright*, 24 Wend. 169; *Merriam v. Lynch*, 53 Wis. 82; *Kiefer v. Carrier*, id. 404; 5 Am. & Eng. Ency. of Law, 528*b*; Cooley, Torts (2d ed.), 531; *Badger v. Batavia Paper Mfg. Co.* 70 Ill. 302; *Woodis v. Jordan*, 62 Me. 490; *Edmundson v. Bric*, 136 Mass. 189.

For the defendant there were briefs by *Cate, Jones & Sanborn*, and oral argument by *D. Lloyd Jones*. They contended, *inter alia*, that the instrument under which plaintiff claims is a chattel mortgage and void as to the creditors of Vaughn & Co.   *Anderson v. Patterson*, 64 Wis. 557; *Winchester W. W. Mfg. Co. v. Carman*, 109 Ind. 31; *Musgat v. Pumpelly*, 46 Wis. 660; Bouvier, Law Dict. tit. SALE; *Bunn v. Valley L. Co.* 51 Wis. 376; *Rockwell v. Humphrey*, 57 id. 410; Jones, Chat. Mortg. sec. 13; *Baldwin v. Crow*, 86 Ky. 679.   The clause reserving title is repugnant to the first or granting clause of the instrument, and is therefore void. *Green Bay & M. Canal Co. v. Hewitt*, 55 Wis. 97; *In re Ortman*, 45 N. W. Rep. (Mich.), 63; 2 Parsons, Cont. (6th ed.), 513.

Cole, C. J.  These are cross-appeals from the same judgment.  The appeal of the defendant below will be first considered.  The action is replevin, and the plaintiff's right to recover the property in controversy depends upon the written agreement entered into between him and A. P. Vaughn & Co., the defendant's assignors, dated December 27, 1887. Is that agreement a conditional sale of the lumber therein mentioned, or is it in the nature of a chattel mortgage? The learned counsel for the assignee contends that it is a chattel mortgage, and void as to the creditors of A. P. Vaughn & Co.  There is some language in the contract which favors this contention, but, when all the provisions of the instrument are regarded, it is very plain that it is a conditional sale and delivery, and nothing else.  On its face it does not profess to be a mortgage.  In the first clause the vendor, in consideration of the agreements and covenants of the vendees thereinafter contained, " has and hereby does. sell and convey, and hereby and by the symbol of the delivery of this contract doth deliver, to " the vendees all those certain piles of lumber described, etc.  In the second clause in the agreement it is provided that the lumber " is at the sole and exclusive risk of the vendees, and any loss thereof, or damages of any kind thereto, shall be borne by them."  The third clause relates to the amount and manner of payments to be made by the vendees for the lumber. Then comes this clause: " It is further expressly agreed by and between the parties hereto that the title and right of possession of the said lumber hereinbefore mentioned shall be and remain in the said party of the first part [the vendor] until the entire amount due from said second party [the vendees] under the contract  shall be fully paid."  This clause shows that the contract was an agreement to sell the lumber upon a condition to be performed, and was not an absolute sale so as to pass title.  The title and possession were to remain in the vendor until the purchase price was

fully paid. There is nothing inconsistent with or repugnant to that intention expressed in the contract.

In the absence of fraud, an agreement for a conditional sale of personal property, accompanied by delivery *sub modo,* is valid as well against third parties as against the parties to the transaction. The statute expressly makes such a contract valid when signed by the parties and filed in the proper office, as this contract was. Sec. 2317, R. S. The statute is founded upon the principle that the compliance with the conditions of the sale and delivery is a precedent condition to the transfer of the property from the vendor to the vendee. See *Harkness v. Russell,* 118 U. S. 663, where there is a learned and able discussion of the law of conditional sales by Mr. Justice BRADLEY. Also, *W. W. Kimball Co. v. Mellon, ante,* p. 133, where the validity of such a contract as the one now before us is impliedly affirmed, when signed by the parties and filed in the proper office.

The counsel for the assignee did not seriously question the validity of a conditional sale, but he claimed this was not such a contract, but was an absolute sale with a reservation of a lien or mortgage to secure the purchase money. The fact that the lumber was to be at the risk of the vendees, who agreed to insure it in responsible companies, to be selected by the vendor, in at least $20,000, and have the policies assigned to such vendor as collateral security, he insisted, strongly confirmed his view of the contract. It was doubtless the intention of the parties that there should be a qualified delivery of the lumber to the vendees. The contract provided that the vendees should render a statement of sales to the vendor on the 15th days of March, April, May, and June, 1888, and pay over all moneys received on such sales, to apply on the purchase price; and on the 1st of July, 1888, should pay the balance of the purchase money. The vendees were impliedly authorized by the agreement to sell the lumber, but were bound to pay

all moneys received from the sales to the vendor, until the purchase money was paid. The vendees, in a sense, acted as agents for the owner in making sales, and, as they were to have a qualified possession of the lumber, which was to be kept in their yard, it was not unreasonable that the property should be at their risk, and that they should insure it for the benefit of the vendor. These stipulations in the contract are not necessarily inconsistent with or repugnant to the clause which we have quoted, which provides that the title and right of possession of the lumber should remain in the vendor until the entire purchase money was paid. Consequently, this being a conditional sale, it is clear that ch. 241, Laws of 1887, which relates to mortgages, has no application to it. Nor does the decision in *Anderson v. Patterson*, 64 Wis. 557, and that class of cases, apply.

The court below held on the trial of the equitable counterclaim that there was nothing in the agreement or in the conduct of the vendor which tended to invalidate his rights, or which warranted the inference that there was anything fraudulent in the transaction, so far as the creditors of Vaughn & Co. were concerned. We fully concur in that view of the evidence. The plaintiff seems to have been diligent in trying to collect his pay of Vaughn & Co., and it is not correct to say the evidence shows that he knew what use the firm was making of the proceeds of the sales of his lumber. He undoubtedly supposed that they were paying over to him all moneys as they collected them, for they so represented, and he credited their statements.

In this case the defendant claims the lumber as assignee of Vaughn & Co. If the contract was a conditional sale and delivery, and was properly recorded, there being no fraud in the transaction, the plaintiff is entitled to the possession of the lumber. Certainly Vaughn & Co. could not give to an assignee for the benefit of creditors, title to property which they did not own. No equities have intervened

Wadleigh vs. Buckingham.

to give the assignee a better right to the lumber as against the plaintiff, who retained by his contract the right of possession. The conditions of the sale have not been complied with, nor have they been waived by anything the plaintiff has done or failed to do. He is entitled, under the circumstances, to recover the lumber which remained unsold. *Coggill v. H. & N. H. R. Co.* 3 Gray, 545; *Harkness v. Russell*, 118 U. S. 663.

This brings us to the plaintiff's appeal. The trial court directed the jury to assess the plaintiff's damages for the unlawful detention of his property at six cents. This direction was given, doubtless, on the theory that there was no evidence of a demand of the property until about the time this replevin action was commenced, and hence no damages for a detention could be assessed. We think the direction was wrong, as there is abundant evidence in the case from which the jury would have been warranted in finding that the defendant assumed the right to dispose of this lumber as a part of the property of Vaughn & Co. which he took under the assignment, and that he exercised dominion over it to the exclusion or in defiance of the plaintiff's rights, immediately after the assignment was made. The assignment was made on the 23d of May, 1889, and in his answer the defendant states that he, immediately upon the execution of the assignment, took possession, as assignee, of the property described in the complaint as being the property of A. P. Vaughn & Co., and ever since that time, and until the commencement of this action, has held said property by virtue of the assignment as the property of A. P. Vaughn & Co., and so conveyed to him by the assignment.

There is considerable testimony that when the plaintiff went, on the 23d of May, 1889, to take the lumber into his possession and control, the defendant forbade him from interfering with it, threatened to have him arrested if he

should attempt to remove it, and claimed that he was in possession of the property as assignee and had the right to hold it as such. There is much testimony of that character in the case, given on both sides, tending strongly to show that the defendant distinctly denied the plaintiff's right to take the lumber. Under these circumstances it is obvious that any formal demand for the lumber by the plaintiff would have been idle and nugatory. He did, however, make a formal demand about the time the suit was commenced, and the evidence tends to prove that he made what was equivalent to a formal demand in May. This being so, the case should have gone to the jury to find whether there was not in fact a conversion of the lumber in May, as claimed by the plaintiff. True, the plaintiff alleges in his complaint that, on the 2d of November, 1889, the defendant wrongfully took possession of the property, and has since unlawfully detained it; but this no more imports verity in the case than the allegation in the answer that the defendant took possession immediately on the execution of the assignment in May. The pleadings could be amended so as to conform to the proof, and the parties ought not to be concluded by them. The question, therefore, should have gone to the jury, to find whether there was not a conversion in May, and whether the plaintiff did not, at that time or shortly afterwards, make what was equivalent to a demand for the possession of the lumber, which was denied by the defendant.

The measure of damages which this court has laid down in numerous cases of this kind is the legal interest on the value of the property while it was unlawfully detained, and compensation for any depreciation, if any, of the property replevied. We do not see why this rule should not govern in this case. There must be a new trial of this issue as to when the defendant converted the lumber by assuming the right to control it or by exercising rights of owner-

ship over it to the exclusion of the plaintiff. When that fact is determined, the above rule of damages will apply.

We see no necessity for trying the other issues in the case, as they have been already fully tried. The new trial will, therefore, be confined to this issue alone.

*By the Court.*— The judgment is affirmed on the defendant's appeal, and is reversed on the plaintiff's appeal, and the cause is remanded for a trial of the issue stated in the opinion.