R. J. EVANS, JR., L. I. EVANS and R. WALTER BENNETT, *Plaintiffs in Error,* v. R. KLOEPPEL, *Defendant in Error.*

## Opinion Filed Nov. 21, 1916.

1. The action of replevin under the statute lies for an unlawful detention of chattels as well as in cases where the taking was tortious.

2. Where a seller of chattels reserves title in himself until the payment of the price, he may maintain an action of replevin upon default in payment of the price.

3. In an action of replevin where the defendant lawfully obtained possession of the chattel, but failed to comply with the conditions of the agreement under which he came into possession of the property, and under the terms of the agreement such default confers on the plaintiff the right of possession, no demand by the plaintiff for possession is necessary before bringing the action. Nor is a demand necessary where the defendant asserts title to the property in dispute.

4. Where in an action of replevin a plea interposed by defendant to the declaration sets up no defense to the action, and the plaintiff joins issue upon such plea and goes to trial, the court should not withdraw from the jury consideration of the issue presented by such plea.

5. Where a cause has been tried upon an immaterial issue which does not determine the rights of the parties in the litigation, judgment should not be entered upon the finding on such a plea.

6. Where pleas to a declaration present no point in bar, abatement or set-off, the plaintiff may treat them as nullities and have a judgment as for want of a plea.

7. Where K. sold an automobile to E. taking in payment part cash and notes for the balance and retaining title to the automobile until the purchase price should be paid in full, the notes providing that in default of payment or in case

of alienation of the property by the maker of the note, the payee should be authorized to take possession of the property, *Held*: that upon default by the payee to pay one of the notes at maturity K. could maintain an action of replevin for the automobile without previous demand and was entitled to possession of the property and damages for the wrongful detention, and that the measure of damages was the value of the use of the property as estimated by the market price of such use during the period of unlawful detention.

8. In such a case a plea by defendant claiming a set-off either against the damages recoverable for the unlawful detention, or the value of the car, on account of the money paid on the purchase price thereof is without merit.

9. Amendments to pleadings at the trial of a cause are allowable in the discretion of the court upon such terms as are reasonable.

10. Section 2188 General Statutes of Florida, 1906, provides that judgment for the plaintiff in actions of replevin shall be satisfied by the recovery of the property or of the amount adjudged against the defendant and the sureties on the forthcoming bond, where the property has been redelivered to the defendant on his forthcoming bond.

11. The sureties upon a forthcoming bond given by a defendant in an action of replevin, submit themselves to the acts of the principal and to the judgment as a legal consequence falling within the suretyship. They are represented in the proceedings by their principal, are bound by his acts, and are quasi-parties to the suit; they thus have their day in court and are bound by the judgment against their principal to the exclusion of all defenses that were or might have been set up by him.

12. Errors occurring in the pleadings and trial of a cause may be rendered harmless by the verdict and judgment so far as the complaining party is concerned.

Writ of error to Circuit Court, Duval County; D. A. Simmons, Judge.

Judgment affirmed.

*L. S. Gaulden,* for Plaintiffs in Error;

No appearance for Defendant in Error.

ELLIS, J.—This is an action of replevin. The defendant in error, who was the plaintiff below, was engaged in business as a dealer in automobiles in March, 1914, under the name of the "Kloeppel Motor Company." The plaintiff in error, R. J. Evans, Jr., who was the defendant below, purchased from Kloeppel an automobile known as "Reo the Fifth Touring Car." The price agreed to be paid was twelve hundred and twenty-five dollars. The terms of the agreement were as follows: Kloeppel was to take in trade an old car owned by Evans at an agreed valuation of four hundred and fifty dollars, and Evans was to pay in cash one hundred and twenty-five dollars, and deliver his six notes for the remainder, each note to be for the sum of one hundred dollars except the second, which was to be in the sum of one hundred and fifty dollars, and each note to contain a provision to the effect that the title to the machine should remain in the payee until the purchase price should be paid in full, and in default of payment or in case of alienation of the property by the maker of the note, the payee should be authorized to take possession of the property. This agreement was concluded by the delivery of the automobile by Kloeppel to Evans and the delivery by Evans to Kloeppel of the old car at a valuation of four hundred and fifty dollars and the payment of one hundred and twenty-five

dollars in cash and six promissory notes for the aggregate sum of six hundred and fifty dollars. The first of these notes was payable April 15, 1914, the second April 27, 1914, and the other four in four months thereafter at intervals of one month.

The plaintiff in error paid the first note, which was for the sum of one hundred dollars, and failed to pay the second which was for the sum of one hundred and fifty dollars. Thereupon the defendant in error, Kloeppel, began his action of replevin against Evans to recover possession of the Reo machine.

The record recites that the affidavit, which the statute requires to be filed in such cases by the plaintiff, was in proper form, the property was described as "One Reo the Fifth Touring Car Automobile Number 53049, 1914 Model," and was of the value of one thousand dollars. And a bond in the sum of two thousand dollars was filed. On the same day the defendant, R. J. Evans, Jr., took the property upon his forthcoming bond with two sureties, L. I. Evans and R. Walter Bennett, in the sum of two thousand dollars.

The declaration is in two counts. The first count alleges that the defendant, R. J. Evans, Jr., on the 27th day of March, 1914, took the property, describing it, and alleging its value to be one thousand dollars, and "unjustly and unlawfully detained the same until the institution of this suit." The second count alleges an unlawful taking.

To this declaration the defendant interposed three pleas, as follows: First, that he did not unlawfully take the goods; second, that no demand had been made upon him for the goods. The third plea was entitled a "defense on equitable grounds." It averred the purchase of the machine by defendant in March, 1914, at the price of

eleven hundred and seventy-five dollars; that the plaintiff was to take in payment therefor defendant's old car at four hundred dollars and one hundred and twenty-five dollars in cash and six notes for the aggregate sum of six hundred and fifty dollars, each note to be in the form and for the amounts and payable upon the dates hereinbefore stated; that the first note was paid, as well as the cash payment of one hundred and twenty-five dollars, and the old car delivered, making a total payment of six hundred and twenty-five dollars; and that he had made default in the payment of such notes as were due when the suit was instituted; that the suit was begun because of such default; that the property was taken from the defendant by the sheriff on the writ of replevin and redelivered to the defendant on his forthcoming bond; that by reason of the suit the plaintiff Kloeppel had elected to rescind the agreement for the sale of the property, but had not offered to refund to the defendant the six hundred and twenty-five dollars paid by the defendant as aforesaid; that defendant was willing to return the property and it would be "inequitable and unjust for the plaintiff to recover the property sold as aforesaid and retain" the amount paid by the defendant, and claimed the amount of six hundred and twenty-five dollars as due to him from the plaintiff, and prayed judgment therefor, concluding the plea in the following language: "And this defendant says and claims that in any judgment of this court ordering this defendant to turn over to plaintiff the property described in the declaration, there should also be included an order or judgment against the plaintiff and his bondsmen ordering him and them to pay to this defendant the said consideration paid by this defendant to plaintiff as part payment aforesaid, to-wit, the sum of $625.00 dollars, and that plaintiff should be required to pay said

sum to defendant before or at the time of the delivery of said car to plaintiff, and defandant so prays and claims damages by way of set-off in the sum of $2,000.00."

The plaintiff joined issue upon these pleas and the cause went to trial on December 1st, 1915, and resulted in the following verdict for the plaintiff:

"Jacksonville, Florida, 1st day of December, 1915.

"We, the jury, find for the plaintiff Kleoppel and that the Plaintiff is entitled to the personal property described in the declaration as follows, to-wit: 1 Reo the Fifth Touring Car Automobile, No. 53049, 1914 Model, and we do further find that the value of said property Nine Hundred Dollars; and further we do assess the damages of the Plaintiff against the defendant for the wrongful detention of said property in the sum of Five Hundred Dollars; we do further find that the defendant Dr. R. J. Evans, Jr., is entitled to money set-off against the Plaintiff for damages in the sum of Six hundred twenty-five Dollars.

"So say we all.

"H. L. Babbitt, Foreman."

On the 2nd day of December, 1915, the following judgment was entered:

"This day came the parties in the above entitled cause, also came a jury of six (6) good and lawful men, to-wit: H. L. Babbitt and five others, who were duly sworn according to law to try the right of property and assess the value and damages in said cause, thereupon the evidence was duly submitted to the Jury aforesaid, and they having heard the argument of counsel and received the charge of the Court, retired to consider their verdict, now upon their oaths do say:

"Kleoppel, Plaintiff, v. Dr. R. J. Evans, Jr., Defendant, Jacksonville, Florida, 1st day of December, 1915.

We, the Jury, find for the Plaintiff, Kleoppel, and that the Plaintiff is entitled to the personal property described in the declaration as follows, to-wit: 1 Reo the Fifth Touring Car Automobile No. 53049, 1914 Model, and we do further find that the value of said property is Nine Hundred ($900.00) Dollars; further, we do assess damages of the Plaintiff against the defendant for the wrongful detention of said property in the sum of Five Hundred Dollars ($500.00) ; we do further find that the defendant, Dr. R. J. Evans, Jr., is entitled to money set-off against the Plaintiff for damages in the sum of Six Hundred Twenty-five ($625.00) Dollars.

"So say we all.

"H. L. Babbitt, Foreman.

"And it further appearing that said property, described in the declaration as follows, to-wit: 1 Reo the Fifth Touring Car Automobile No. 53049, 1914 Model, was redelivered to the defendant on his forthcoming bond, and it further appearing that the defendant's sureties on said forthcoming bond are Lynwood I. Evans and R. Walter Bennett, and it appearing that the Plaintiff elects to take execution for the value of said property against the defendant, and its sureties, and it appearing from the verdict herein that the damage recovered by the defendant offsets the damage recovered by the Plaintiff, and One Hundred and Twenty-five ($125.00) Dollars on the value of said property, it is, therefore,

"*Considered, Ordered and Adjudged* that the plaintiff, R. Kloeppel, do have and recover of and from the defendant, R. J. Evans, Jr., the possession of one (1) Reo the Fifth Touring Car Automobile, No. 53049, 1914 Model, and that said Plaintiff, R. Kloeppel, do have and recover of and from the defendant, R. J. Evans, Jr., and the said Lynwood I. Evans and R. Walter Bennett, the

18

sureties on the forthcoming bond of said defendant, the sum of Seven Hundred and Seventy-five ($775.00) Dollars, same being the balance on the value of said property, as found by the Jury, after allowing offset of One Hundred Twenty-five ($125.00) Dollars thereto directed, and also his costs in this behalf expended, herein taxed at $5.70 Dollars for both of which said sums, to-wit_____ Dollars costs, and Seven Hundred and Seventy-five ($775.00) Dollars, balance of value, let execution issue."

On the 13th day of December, 1915, at the same term of the court the defendant made and submitted a motion for a new trial which was overruled.

Two days after the judgment was entered the two sureties upon the forthcoming bond filed by Evans made a motion to set aside the judgment as to them and to stay execution thereon. The basis of this motion was: That the sureties were not parties to the suit, had not had their day in court, that the judgment deprived them of property without due process of law; that the statute authorizing a judgment against the sureties upon a forthcoming bond in such suit for the value of the property was unconstitutional; that the judgment did not conform to the verdict nor the statute in such cases provided, and was contradictory in that it awarded possession of the property to the plaintiff and judgment for its value.

Counsel for plaintiff in error has assigned twenty-two errors, which in his brief he insists should be considered by the court to the end that many questions involving the law of replevin may be determined for the "common good and benefit." Counsel may have been moved by considerations of this nature in addition to the usual laudable desire to efficiently serve his client, but the existence of such altruistic motives on the part of counsel is not required to induce the court to consider such questions as

are properly presented which the court may deem neces-
sary to a disposition of the case.

Replevin originated at common law as a remedy
against the wrongful exercise of the right of distress for
rent, and although for several centuries the use of it in
other takings was rare, it came gradually to be applied in
all cases of a wrongful taking of goods.  1 Archbold's
Nisi Prius, 568. The form of the action was so useful that
it was extended to nearly all cases of wrongful taking of
chattels where it was sought to recover the chattels in
specie.   Detinue was a form of action given for the re-
covery of a specific thing, and damages for its detention
and judgment was rendered in favor of the plaintiff for
the alternate value provided the thing could not be re-
covered.

Under the statutes of this State the remedy is no
longer limited to cases in which the taking is tortious, but
the action lies for an unlawful detention.   Sec. 2171 Gen-
eral Statutes of 1906, Florida Compiled Laws, Sec, 2171;
Williams v. Hampton, 57 Fla. 272, 49 South. Rep. 506;
Simmons v. Williford, 60 Fla. 359, 53 South. Rep. 452;
Ann. Cas. 1912 C, 735.   This court has several times
said that where the seller of chattels reserves title in him-
self until payment of the price, he may bring replevin
upon default in the payment.   Scott Mfg. Co. v. Carr,
53 Fla. 480, 43 South. Rep. 427; Campbell Mfg. Co. v.
Walker, 22 Fla. 412; Mizell Live Stock Co. v. J. J. Mc-
Caskill, 59 Fla. 322, 51 South. Rep. 547.

An allegation of unlawful taking in a declaration in
replevin in this State is entirely unnecessary.   The action
lies to recover possession of personal chattels that are un-
lawfully detained, and for damages for the detention.
And to sustain replevin the defendant must have actual
or constructive possession or control of the property and

the plaintiff must be entitled to the immediate possession thereof when the action is brought.    Simmons v. Williford, *supra.*

Neither one of the pleas interposed by the defendant were valid as setting up any defense whatsoever to the action.    All of them may have been true so far as the averments of fact were concerned, yet they did not constitute severally or collectively a defense to the action. Even if the denial of an unlawful taking may be considered as tendering an issue, it applied only to the second count of the declaration, although it was pleaded to the entire declaration.    The plea of no demand was not accompanied by any offer to surrender, and even though the evidence failed to show any demand, the case was not one where a demand was necessary, because as has been shown, upon default having been made in the payment of the purchase price of the machine, the plaintiff was entitled to his action of replevin.    Webster v. Brunswick-Balke-Callendar Co., 37 Fla. 433, 20 South. Rep. 536; Campbell Mfg. Co. v. Walker, *supra.*    Besides the defendant gave a forthcoming bond and took possession of the property and held it.    This showed *prima facie* an assertion of title to the property in dispute.    Webster v. Brunswick-Balke-Callendar Co. *supra.*    In which case no demand was necessary.

The third plea constituted no defense and tendered no issue of fact, material or immaterial.    The assertions of legal conclusions and claims to a set-off based upon the averments of fact could not be considered as tendering an issue.    The plea on its face entitled the plaintiff to a verdict for the possession of the property.    See Huling v. Florida Savings Bank, 19 Fla. 695, text 708.    The contract was not shown to be invalid between the parties for any reason.    They were free to make whatever contract

they pleased, so long as there was no violation of the law in so doing, and although such contracts may be considered as showing a hard bargain with the seller of the property, the court will not undertake to substitute a new and different one from the one which the parties made.

Why issue was joined upon these pleas no one has appeared here to explain. The plaintiff below, however, must abide the consequences of such course and be held to a strict accountability for ignoring the obvious course he should have followed in dealing with the pleas of the defendant.

In the case of Hood v. French, 37 Fla. 117, 19 South. Rep. 165, this court, speaking through Judge CALL of the Fourth Circuit, who sat on account of the disqualification of one of the judges of this court, said: "It is the business of parties litigant to frame their pleadings properly. When a party fails or neglects to demur to faulty pleadings, but takes issue thereon, he cannot be allowed to withdraw the issue made thereon from the consideration of the jury sworn to try those very issues." The parties to the cause and their counsel must be held to some responsibility in presenting the issues to be tried, and there is no more effective method than by holding them to a strict accountability. It has frequently been decided that however immaterial, defective or demurrable a plea may be, if issue be joined upon the plea, and the evidence sustains it, the defendant has the right to have the court charge the jury upon such pleas."

The one fact in issue in this case, as tendered by the pleas, was the unlawful taking of the property. As immaterial as that fact was and as defective and demurrable as the plea was as a defense to the first count of the declaration, the plaintiff joined issue upon it. The evidence amply sustained it, and of course the verdict should have

been for the defendant upon that plea. The charge of
the court practically withdrew from the jury the consid-
eration of the immaterial issue presented by the first plea.
That was error. Hood v. French, *supra;* Jones v. Sho-
maker, 41 Fla. 232, 26 South. Rep. 191; Clyde Steamship
Co. v. Burrows, 36 Fla. 121, 18 South. Rep. 349. It does
not follow, however, that when a cause has been tried
upon an immaterial issue which does not determine the
rights of the parties in the litigation, that judgment
should be entered upon the finding on such a plea. Such
was the rule in Alabama, but our court has not gone to
this extent. It follows, therefore, that even if there had
been a verdict for the defendant upon the immaterial
issue tendered by the first plea and accepted by the plain-
tiff, the court would not have given judgment for the
defendant, but would have probably, under the circum-
stances of this case, awarded a repleader. Such would
have been the proper course, for if judgment is entered
upon a verdict rendered upon an immaterial issue, the
appellate court should reverse it, though it may not direct
a judgment of repleader. See American Process Co. v.
Florida White Press Brick Co., 56 Fla. 116, text 126, 47
South. Rep. 942; Owens v. Wilson, 58 Fla. 335, 50
South. Rep. 674; Hyer v. Vaughn, 18 Fla. 647; Huling
v. Florida Savings Bank, *supra.*

As to the second and third pleas, they presented no
point either in bar, abatement or set-off, and so far as
they were concerned the plaintiff could have treated them
as nullities and signed judgment as for want of a plea.
Such is the doctrine announced by this court in Huling v.
Savings Bank, *supra.* Stephen on Pleading, 97, 129.
See also 2 Tidd's Prac. 922; 2 Chitty on Pleading, 688;
Duval v. Malone, 14 Gratt. (Va.) 24. The third plea

interposed under the statute as a defense on equitable grounds was entirely destitute of merit and constituted neither a legal nor equitable defense.

The verdict in this case, however, was for the plaintiff. It was such a verdict as should have been rendered upon the merits so far as it awarded the possession of the car to the plaintiff. It was erroneous in so far as it allowed a set-off in favor of the defendant against the plaintiff's claim.

Plaintiff in error attacks the verdict upon the ground that it allows damages to the plaintiff Kloeppel in the sum of five hundred dollars for the wrongful detention of the property. The statute provides for the recovery by the plaintiff in an action of replevin, of damages sustained by reason of the wrongful caption or detention. When the defendant made default in the payment of the purchase price of the machine or any part of the price as represented by any one of the notes, the plaintiff became entitled to the possession of the car and his action of replevin to recover it without previously making demand for the possession. There is some conflict of authority as to when a demand for the possession of property by the plaintiff becomes a condition precedent to his maintaining an action of replevin. This court in Webster v. Brunswick-Balke Callender Co. supra., speaking through Mr. Justice LIDDON, said: "The question as to the necessity of making a demand as a condition precedent for maintaining an action of replevin, under what circumstances it is necessary, and when it may be dispensed with, appears to be one of considerable complication and about which there is much conflict of authority." The rule seems to be very well settled however, that where possession was lawfully acquired by defendant and he claims the ownership of the property sued for, or where

the defendant's right of possession has terminated by his own act or default, or where he converts the property to his own use, or deals with it as his own in a manner inconsistent with the plaintiff's ownership and right of possession, or where by the terms of a valid contract the default of the defendant confers upon the plaintiff the right of possession, no demand is necessary.   The reason for a demand as a condition precedent to maintaining an action of replevin is that the defendant should be given an opportunity to surrender the property before he is subjected to the annoyance and cost of a lawsuit; but where the defendant's conduct is inconsistent with any supposition that the property would have been surrendered if a demand had been made the reason for the rule ceases.   See Becker v. Vandercook, 54 Mich. 114, 19 N. W. Rep. 771; Beebe v. DeBaun, 8 Ark. (3 Eng.) 510; Copeland v. Kilpatrick, 38 Colo. 208, 88 Pac. Rep. 472; Sinamaker v. Rose, 62 Ill. App. 118; Barton v. Mulvane, 59 Kan. 313, 52 Pac. Rep. 883; Satterthwaite v. Ellis, 129 N. C. 67, 39 S. E. Rep. 726; Wadleigh v. Buckingham, 80 Wis. 230, 49 N. W. Rep. 745; Guthrie v. Olson, 44 Minn. 404, 46 N. W. Rep. 853.   Under the terms of the agreement, upon the default of the defendant the plaintiff's right to the possession of the property accrued instanter.   A demand for the possession of the property could not have conferred any better right.   The obligation rested upon the defendant by the terms of the contract of his own making to pay the note or surrender possession of the property.   The defendant's third plea, however, shows that a demand upon him for possession of the property would have been unavailing because in that plea he insists upon the plaintiff complying with conditions which are wholly unreasonable and unjustified by any provision of the contract.   In addition to this the de-

fendant instead of attempting to surrender possession of the property, gave a redelivery bond so as to enable him to retain the possession as against the plaintiff.

We think that the plaintiff was entitled to damages for the wrongful detention of the car and the measure of damages was the value of its use as estimated by the market price of such use during the period of unlawful detention. And where it appears that the property was not in fact used, but was cared for by the defendant during its detention so that its condition at the time of the trial was as good as it was when the illegal detention began, the market value of the use should be reduced by such sum as would be equivalent to a reasonable allowance for the deterioration of the property if it had been used during such period of illegal detention, and the necessary repairs and expenses which the plaintiff would have incurred had it been rented during that period. See Ocala Foundry & Machine Works v. Lester, 49 Fla. 199, 38 South. Rep. 51.

Measured by the above principle, which is the settled law in this State upon the subject, we think that the damages allowed the plaintiff for the unlawful detention of the property were excessive and unjustified by the evidence. The car was purchased by defendant during the latter part of March, 1914; the value or purchase price was twelve hundred and twenty-five dollars. The suit was instituted May 20, 1914. The jury a year and a half afterwards found the value of the car to be nine hundred dollars. There was no evidence to show what the market price of the use of the car was during the period of unlawful detention. The plaintiff said that the car had a market rental value in Jacksonville at the time the suit was instituted, but he did not say that he knew what the market rental value was. The court permitted him

to testify what its reasonable rental value was during the period of detention. The testimony of the plaintiff in this regard shows that he did not speak from his knowledge of the market value of the car's rental, but that he spoke from his estimate of the net value to him of the daily use of the car. It is true that the jury did not allow the plaintiff the amount per day which he said was the reasonable rental value of the car, but the sum allowed was entirely without any evidence to support it. The motion of defendant's counsel to strike the plaintiff's testimony as to the rental value of the car, the overruling of which motion constitutes the basis of the third assignment of error, should have been granted.

There was no error in the court's ruling allowing the plaintiff to amend the *ad damnum* clause in his declaration.

The sixth assignment of error rests upon the court's refusal to instruct a verdict for the defendant, and the eighth assignment challenges the correctness of the court's instruction to the jury that the plaintiff was entitled to a verdict upon the issues joined. Upon the authority of the decisions of this court above cited. these assignments are well taken. The case was tried upon an immaterial issue and the practice in this State in such cases is not to withdraw such issue from the consideration of the jury but permit a verdict to be entered upon it and then enter a judgment *non obstante veredicto* or award a repleader.

The form of the judgment in this case was correct in so far as the plaintiff took judgment for the property itself and against the defendant and the sureties on the forthcoming bond of the defendant for the value of the property. The statute provides that the judgment shall be satisfied by the recovery of the property or of the

amount adjudged against the defendant and his sureties. See Sec. 2188 Gen. Stats. of 1906, Complied Laws of Florida, Sec. 2188 Sub. Div. 2; Johnson v. Clutter Music House, 55 Fla. 385, 46 South. Rep. 1.

The thirteenth, twentieth and twenty-second assignments of error attack the validity of the statute above referred to because it authorizes judgment against the sureties upon the forthcoming bond without providing for them due process of law. It is contended that Section 2188 of the General Statutes of Florida, 1906, providing that when it appears that the goods, which are sought to be recovered in an action of replevin, have been redelivered to the defendant upon his forthcoming bond the plaintiff shall take judgment for the property itself and against the defendant and the sureties in the forthcoming bond of the defendant for the value of the property, provides a course of procedure which has for its object the taking of property of the sureties on the bond to satisfy an alleged legal obligation, but accords no hearing to the sureties on the forthcoming bond upon such questions as may go to the validity of the judgment, and other defenses personal to them.

Section 2183 of the General Statutes of Florida, same section of Compiled Laws of Florida, makes provision for the return or redelivery of the property taken in replevin, to the defendant upon his giving bond in double the value of the property as appraised by the officer executing the writ, with security to be approved by such officer, conditioned to have said property forthcoming to abide the result of the suit instituted against the same.

The Act from which the above Section of the General Statutes was taken originated in 1861, and was entitled "An Act Concerning Replevin." It has been carried forward through McClellan's Digest, the Revised

Statutes and General Statutes in substantially the language of the original enactment.   Prior to the Act of 1861 it was the duty of the officer upon the receipt of the writ to forthwith proceed to execute the same by delivering the possession of the property described in the writ to the plaintiff.   The Act of 1861, Chapter 1099, Sec. 1, provided that it should not be lawful for the officer executing the writ to deliver the property to the plaintiff until after the lapse of three days from the time the property was taken, during which time the defendant could "come forward" and give bond with security to be approved by the officer, conditioned to have the property forthcoming to abide the result of the suit instituted against the same, in which case the property should be redelivered to the defendant.   The Revised Statutes changed the phraseology of this section, so that it affirmatively appears to be the duty of the officer executing the writ to deliver the property to the plaintiff after the lapse of three days from the time the property is taken, unless within that time the defendant shall give his forthcoming bond.   In this form the section now appears in the General Statutes. .

Section 2188 Subdivision 2 of the General Statutes of Florida, same section Compiled Laws of Florida, provides for a judgment to be entered for the plaintiff when it appears that the goods have been redelivered to the defendant upon his forthcoming bond.   This section provides that the plaintiff shall take judgment for the *property* itself and against the defendant and the sureties on the forthcoming bond of the defendant for the value of the property.   "Such judgment to be satisfied by the recovery of the property or of the amount adjudged against the defendant and his sureties."   This section further provides that "After the rendition of the judgment the

plaintiff may at his option, sue out a writ of possession for the property and the execution for his costs, or sue out execution against the defendant and his sureties for the amount recovered as aforesaid and costs. If he shall elect to sue out a writ of possession for the property, or any of it, the plaintiff may immediately sue out execution against the said defendant and his sureties as aforesaid for the whole amount recovered against them, or for the amount recovered less the value of the goods found by the officer," etc. This is the same language as is contained in the Revised Statutes of Florida, 1892, Section 1724, Subdivision 2.

The basis for Sections 2188 of the General Statutes, and Section 1724 of the Revised Statutes, was Section 2, Chapter 1099, Acts of 1861, as amended by Chapter 3133 Acts of 1879. The Act of 1861 provided that where the property had been re-delivered to the defendant and the plaintiff should maintain his suit, "It shall be at his option to take judgment for the value of the property and sue out execution for the same, or take judgment for the property itself and sue out a writ of possession; and whenever the officer to whom said writ of possession is directed shall be unable to find said property and shall so return said writ of possession, then the plaintiff in replevin may immediately sue out execution against both principal and sureties on the bond hereinbefore provided for, for the whole amount of the penalty of said bond." The Act of 1879, Chapter 3133, amended the last line above quoted so that execution against the principal and sureties on the bond should be for the "value of the property so replevied." In this form it was brought forward into McClellan's Digest, Chapter 173, section 17. Now the Commissioners who prepared the Revised Statutes of 1892 did not follow the Acts of 1861 and 1879

in Subdivision 2 of Section 1724, but used such language as requires the judgment for the plaintiff to be taken for the property itself and against the defendant and the sureties on the forthcoming bond of the defendant for the value of the property, etc.

Before the Revised Statutes, the successful plaintiff in an action of replevin had his election to take a judgment for the value of the property and to sue out an execution thereon or for the property itself and to sue out a writ of possession, but he could not have both. McGriff v. Reid, 37 Fla. 51, 19 South. Rep. 339; Johnson v. Clutter Music House, 55 Fla. 385, 46 South. Rep. 174. Under the Act of 1861 as amended in 1879, if the plaintiff elected to take a judgment for the property itself and the officer to whom the writ of possession was directed should be unable to find the property and should so return, the plaintiff was authorized under such conditions to sue out execution against both principal and sureties on the forthcoming bond for the value of the property so replevied.

The change made by the Revised Statutes and followed in the General Statutes is apparent. The successful plaintiff in replevin is no longer confined to an election as to which judgment he shall take, but he has a double judgment; for the property itself *and* for its value. In the second place he secures a judgment against the sureties on the forthcoming bond for the value of the property. This judgment is to be satisfied either by a recovery of the property or of the amount adjudged against the defendant and his sureties. The plaintiff after judgment is rendered has the option to sue out a writ of possession for the property and execution for costs or execution against the defendant and sureties for the amount recovered and costs. But the

plaintiff's remedy is not exhausted by one exercise of the option, because ·if he sues out a writ of possession and the officer returns that he is unable to find the property or any of it, the plaintiff may have execution against the defendant and his sureties for the whole amount recovered against them, or for that amount less the value of the goods found by the officer.

Under the statutes of 1861 and 1879 the sureties upon the forthcoming bond were not parties to the judgment in name, and execution could be issued against them only upon a return by the sheriff that the goods which by their bond they had bound themselves to have forthcoming to abide the result of the suit, could not be found. Under the Revised Statutes and General Statutes, the sureties are parties to the judgment and execution may be taken against them for the amount recovered and costs, at the option of the plaintiff, *notwithstanding* the sureties may have the property forthcoming to abide the result of the suit; in other words that the condition of the bond has been fully performed. The two sections of the General Statutes, 2183 and 2188, when considered together make the liability of the sureties on a forthcoming bond to the extent of the value of the property conditioned upon the successful maintenance of the suit by the plaintiff. These sections merely provide for the assumption of the obligation by and a summary judgment against the sureties. So that when one becomes a surety upon a forthcoming bond, he is charged with notice that if the plaintiff succeeds in maintaining his suit, judgment will be entered against the surety to the amount of the value of the property. These statutes together are a substitute for the judicial writ *de proprietate probanda* which is unknown to our practice. Under this old practice where the de-

fendant claimed the property the writ issued, directing the sheriff to summon an inquest to determine the validity of the claim, and if the jury found for the defendant the sheriff made return of their finding. In this State the forthcoming bond is a convenient substitute for the old practice. It is bond given in the course of legal proceedings, the sureties having full knowledge of the consequences to them of a judgment against their principal. By becoming sureties upon the bond, they submit themselves to the acts of the principal and to the judgment as itself a legal consequence falling within the suretyship. They are represented in the proceedings by their principal, are bound by his acts and are quasi-parties to the suit. They thus have their day in court being by their act conclusively bound by the judgment against their principal to the exclusion of all defenses that were or might have been set up by him. See Masser v. Strickland, 17 S. & R. (Pa.) 354; Musselman v. Commonwealth, 7 Barr (Pa.) 240; Neal v. Gordon, 60 Ga. 112; Craig v. Herring, 80 Ga. 709, 6 S. E. Rep, 283; Schott v. Youree, 142 Ga. 233, 31 N. E. Rep. 591; Boyd v. Huffaker, 40 Kan. 634, 20 Pac. Rep. 459; Richardson v. Peoples Nat. Bank, 57 Ohio St. 299, 48 N. E. Rep. 1100. The effect of our Statute is merely to declare that a forthcoming bond shall have on a successful maintenance of the suit by the plaintiff the force and effect of a judgment and that execution may immediately issue thereon. In this view of the law the old and the new statutes are not different. Under the latter the sureties are deprived of no rights that they may have exercised under the former. The great weight of authority is to the effect that the surety by signing the undertaking becomes a quasi-party to the suit and is held to have notice of all

the proceedings thereafter in the suit that may affect his liability on the undertaking. "The statute was designed to give a speedy remedy against those who by becoming surety on such undertakings have assisted another in depriving a party of his property." Richardson v. Peoples Nat. Bank, *supra.* The statutes do not do violence to the due process clause of the Fourteenth Amendment, because the surety by signing the undertaking, the condition and consequences of which are fixed by statute, enters the court for the purpose of contesting or aiding his principal in contesting a question in an action pending in the court and is thus deemed to have submitted himself to the jurisdiction of the court for all purposes of the action. York v. Texas, 137 U. S. 15, 11 Sup. Ct. Rep. 9; Western Indemnity Co. v. Rupp, 235 U. S. 261, 35 Sup. Ct. Rep. 37.

While there were errors in the trial of this cause, and in the pleadings, they were rendered harmless by the verdict and judgment so far as the plaintiff in error was concerned. The defendant in error was entitled to damages for the unlawful detention of the machine and the measure of damages was the market price of the use of it during the period of unlawful detention, and although the defendant in error was allowed five hundred dollars damages for the detention of the machine the plaintiff in error was allowed an offset to which he was not entitled of six hundred and twenty-five dollars. So that the effect of the judgment in its last analysis is to award to the defendant in error the property to the possession of which he was entitled, and instead of allowing him any damages for the use of the machine during the period of unlawful detention required him to pay the plaintiff in error the sum of one hundred and twenty-five dollars, which is the difference between the five hundred dollars

allowed to the defendant in error by the jury for the un-lawful detention of the machine and the six hundred and twenty-five dollars allowed to the plaintiff in error as an offset, but the defendant in error who was plaintiff below is not here complaining, and we think that the plaintiff in error who was the defendant below is not in a position to complain.

The judgment should be affirmed, and it is so ordered.

TAYLOR, C. J., and SHACKLEFORD, COCKRELL and WHITFIELD, JJ., concur.